# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00763-CR

**Douglas W. Frieling, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. 532531, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

Appellant Douglas W. Frieling appeals his conviction for prostitution by agreeing to engage in sexual conduct for a fee. *See* Tex. Pen. Code Ann. 43.02(a)(1) (West 1994). The jury found appellant guilty. The trial court assessed punishment at ninety days in county jail and a fine of $1000. The trial court, however, suspended the imposition of the sentence and placed appellant on community supervision for one year, subject to certain conditions.

## Points of Error

Appellant advances two points of error. First, appellant asserts that "[s]ection 43.02 of the Texas Penal Code is overbroad in violation of the First Amendment to the United States Constitution." It is clear from appellant's argument that his federal constitutional attack is directed to subsection (a)(1) of the statute, not the entire statute. Second, appellant contends that the "trial court committed fundamental error in failing to instruct the jury that a person must intend to engage in sexual conduct for a fee in order to be convicted of 'agreeing' to do so." We will affirm.

**Information**

The information in pertinent part alleged that appellant:

on or about the 13th day of May, A.D. 1999, did then and there knowingly offer and agree to engage in sexual conduct to wit: the defendant offered and agreed to have sexual intercourse with A. Hernandez, for a fee.

**Facts**

Appellant does not challenge either the legal or factual sufficiency of the evidence, but the facts will place our discussion of the points of error in proper perspective.

The instant case arises from an undercover sting operation by the Austin Police Department. Officer Angela Hernandez testified that on the night of May 13, 1999, she was working undercover in east Austin, standing at the intersection of east 12th Street and Coleto, pretending to be a prostitute. She was "wired for sound" with a police videotaping device trained on her. Hernandez described her attire as being blue jean shorts, a buttoned-down shirt untucked, with brown lace-up boots. About 9:00 p.m., a white pickup truck pulled up at the corner. Hernandez identified the driver as appellant. He was alone. The truck window was down. Appellant stated, "Howdy." Hernandez responded, "Hey, what's up." Then appellant asked, "What's happening?" Hernandez inquired, "Are you looking to get laid?" Hernandez explained that out on the street "laid" meant sexual intercourse. In response to Hernandez's inquiry, appellant responded, "Sure." Hernandez told appellant that she charged thirty dollars for "straight sex." According to Hernandez, appellant said, "Okay," and nodded his head up and down. Hernandez accepted this as an agreement. She told appellant, "Cool, meet me around here" and directed appellant by pointing to a place east on 12th

2

Street where she would meet him. As appellant was raising the truck window, Hernandez explained that "there were too many damn laws" around. Appellant drove east on 12th Street as directed and stopped, even though the traffic light was green. The police "take-down" team immediately arrested appellant. The State introduced into the evidence the audio videotape which confirmed Hernandez's testimony.

Appellant testified that he was fifty-four years old, single, a tax accountant, and that he had lived in Austin since 1955. He related that he had served in the military for six years and had been a military policeman. Appellant stated that he had never been arrested before in his life.

On the evening in question, appellant was on his way to his ninety-year-old mother's home on Concordia Street, about a mile from the area where he encountered Hernandez. Appellant explained that he was his mother's primary caretaker and that she had become disoriented the previous day. Appellant acknowledged that he once lived on Concordia Street and he was "very familiar" with the neighborhood near 12th Street and Coleto, and that it was a "bad part of town." He was aware that there had been drug sales and prostitution in this high crime area. Appellant admitted that he had seen prostitutes "all over the place in that area."

Appellant testified that Hernandez was pacing back and forth on the corner when he saw her; that she looked liked a college girl out of place in "a rough area." When he passed Hernandez, he made eye contact with her and decided she was "in trouble." Appellant circled the block and came around on Coleto Street and stopped to determine if she was "in trouble."

Appellant testified that when Hernandez asked him if he was "looking to get laid," he realized that she was not a college girl. He became concerned that the prostitute might be on drugs

3

and a car-jacking was about to happen. Appellant stated that he wanted to leave but could not because of the oncoming traffic. He admitted that he said "okay" to her offer of thirty dollars for straight sex because he wanted to avoid "a confrontation." Appellant stated that he did not intend to agree to pay Hernandez for sex, that he was "trying to get out of there, I mean I wasn't concerned about this thing. I mean, I didn't know the cameras were on." Appellant related that Hernandez pointed for him to go right "over here across the street," and "meet me across the street." Appellant turned east on 12th Street and said he stopped only when he saw the police car red and blue lights.

On cross-examination, appellant acknowledged that he didn't think "you can dispute what's on the tape." When asked about his belief that Hernandez was a college girl and generally about the way prostitutes dress, appellant volunteered:

> I see prostitutes in all kinds of areas. I mean, I travel on business to Las Vegas on business and prostitutes are—look like the girl next door, I mean, very well-dressed and very prim and very proper. So, you know, I'm not sure that you can say that is—you know, what somebody is dressed like says that they're a prostitute."

### The Verdict

In the jury charge the trial court submitted in the disjunctive whether appellant was guilty of knowingly offering to engage or knowingly agreeing to engage in sexual conduct for a fee as alleged.[1] The jury returned a general verdict: "We, the jury, find the defendant Douglas Frieling Guilty of the offense of prostitution." By its action, the jury obviously rejected appellant's version of the event.

---

[1] When several means or modes of committing an offense are alleged in the conjunctive, it is permissible for the trial court to submit the modes in the disjunctive in the jury charge. *See McDuff v. State*, 939 S.W.2d 607, 614 n.2 (Tex. Crim. App. 1997).

4

When different theories of liability are submitted to the jury in the disjunctive, a general verdict is sufficient if the evidence supports one of the theories. *See Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999); *Rabbani v. State,* 847 S.W.2d 555, 558-59 (Tex. Crim. App. 1995); *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992); *Kitchens v. State*, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991). The evidence is sufficient to support the theory that appellant knowingly agreed to engage in sexual conduct for a fee. Appellant in his brief agrees. He does not challenge the sufficiency of the evidence.

### Appellant's Argument

Appellant's points of error are interrelated, although one is a constitutional attack upon the statute under which appellant was convicted and the other is a claim of fundamental error in the jury charge. Appellant attacks the plain statutory language of section 43.02(a)(1) and a decision construing the statute—*Mattias v. State*, 731 S.W.2d 936 (Tex. Crim. App. 1987). Appellant contends that "intent" is a necessary element of the offense of prostitution as charged, and that the Court of Criminal Appeals was in error when it held to the contrary in *Mattias*. *Id.* at 937. For this reason, appellant urges that the trial court fundamentally erred in its jury charge by not including the culpable mental state of "intent." Appellant then argues that section 43.02(a)(1) as interpreted by *Mattias* is constitutionally overbroad, as it suppresses a man's freedom of speech to "jokingly offer a woman a million dollars to have sex with him" or agree to have sex for a fee because he believes "that pretense is the best way to escape a situation." We shall first discuss appellant's second point of error in order to provide a broader basis for consideration of his constitutional challenge to the statute.

## The Jury Charge

There was no objection to the jury charge nor was a special requested charge submitted to the trial court. *See* Tex. Code Crim. Proc. Ann. arts. 36.14, 36.15 (West Supp. 2001). Nevertheless, appellant claims fundamental error—that the trial court failed *sua sponte* to instruct the jury that a person must have the intent to actually engage in sex for a fee in order to be convicted of "agreeing to do so." Appellant relies upon *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). *Almanza* provides, *inter alia*, that if a jury charge error is not preserved at trial, as in the instant case, the accused must claim fundamental error and "will obtain a reversal only if the error is so egregious, and created such harm that he has not had a fair and impartial trial—in short egregious harm." *Id*. at 171.

Appellant urges that the first question is whether section 43.02(a)(1) requires a culpable mental state other than "knowingly"; that *Mattias* to the contrary was wrongly decided and should be overruled;[2] and that the statute does require an intent to consummate an offer or agreement to engage in sexual conduct for a fee. Appellant argues that "it is likely that the Legislature only meant that the defendant had to 'know' what the agreement was first, and then intend to honor it by agreeing." Appellant contends that the offense of which he was convicted was a "result-type" crime in the sense *that a result is intended*. The State argues that *Mattias* has rejected appellant's contentions.

In order to determine whether appellant suffered egregious harm by any unobjected-to jury charge error, the actual degree of harm must be assayed according to *Almanza*, in light of the

---

[2] Appellant acknowledges that this Court cannot overrule *Mattias*, a Court of Criminal Appeals decision.

entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of evidence and any other relevant information revealed by the record of the trial as a whole. *Id*., 686 S.W.2d at 171; *Frost v. State*, 25 S.W.3d 395, 400 (Tex. App.—Austin 2000, no pet.).

Appellant does not refer to or analyze the foregoing factors. He argues that the trial court should have *sua sponte* divined the argument he now makes that "intent" is an essential element of the offenses alleged and should have charged the jury accordingly. In examining the record, we observe that appellant filed no motion to quash or set aside the information for failure to allege an essential element. He thereby waived any right to complain on appeal as to the pleadings. Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp. 2002). No motion for an instructed verdict of "not guilty" was filed, and the sufficiency of the evidence was not challenged at trial. And, of course, there was no objection to the jury instructions. A motion for new trial was filed but was overruled by operation of law without a hearing. The trial court was never alerted to the contention now advanced as to the statutory construction of section 43.02(a)(1). Many of *Almanza's* factors are not particularly helpful here in light of appellant's particular contention. Therefore, we turn to the power of the legislature, the rules of statutory construction, the historical background and case law concerning the statute in question.

### The Power of the Legislature—The Duty of the Judiciary

The legislature is vested with the power to create crimes and prescribe penalties. Tex. Const. art. III, § 1; *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990); *State ex rel Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973). Unless limited by constitutional

7

provisions the legislature has the inherent power to define and punish any act as a crime. *Ex parte Smith*, 441 S.W.2d 544, 547 (Tex. Crim. App. 1969); *Webb v. State*, 991 S.W.2d 408, 414 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

While it is the duty of the legislature to enact laws, it is the function of the judiciary to interpret those laws when called upon to do so. *State v. Mancuso*, 919 S.W.2d 86, 87 (Tex. Crim. App. 1996). The legislature is constitutionally entitled to expect that the judiciary will faithfully follow the specific text of a statute that was adopted. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Courts will necessarily focus their "attention on the literal text of the statue in question and attempt to discern the fair objective meaning of that text at the time of the enactment." *Id*. "Where the statute is clear and unambiguous, the legislature must be understood to mean what it has expressed and it is not for the courts to add or subtract from such a statute." *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991); *see also Mason v. State*, 980 S.W.2d 635, 638 (Tex. Crim. App. 1998). All statutes carry a presumption of validity. *Visason v. Burger*, 773 S.W.2d 263, 266 (Tex. 1989). We now turn our attention to the offense of prostitution and, more particularly, to section 43.02(a)(1).

**Prostitution**

"The criminal offense generally known as 'prostitution' has persisted since biblical times." 63C Am. Jur. 2d., *Prostitution*, § 1 (1997). The law against prostitution has long prevailed in Texas, but we shall concern ourselves only with the current law and its historical notes.

Section 43.02(a)(1) was first enacted as part of the 1974 Penal Code of Texas. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 958-59. Section 43.02(a)(1) then read:

> (a)   A person commits an offense if he knowingly:
>
>> (1)   offers to engage, agrees to engage or engages in sexual conduct in return for  a fee payable to the actor.[3]

In their 1973 Practice Commentary to section 43.02, Seth S. Searcy and James R. Patterson wrote:

> Subsection (a)(1) defines the offense of prostitution formerly set out in various subdivisions of the vagrancy statute, Penal Code art. 607 (9), (16) to (20). *It differs from prior law by focusing on conduct rather than status or location*.

(Emphasis Added).

The initial version contained only the expressed culpable mental state—"knowingly." In 1977, section 43.02(a)(1) was amended. This amendment simply deleted the phrase "in return" and "payable to the actor" preceding and following "for a fee." This 1977 legislative action was taken in order to "equally criminalize both parties in any situation public or private where such solicitive conduct occurs." Ed Kinkeade & S. Michael McColloch, *Texas Penal Code Annotated* § 43.02 (West Group 2000-01 ed.).

---

[3] Section 43.01 was enacted at the same time by the same bill and provided in pertinent part: "(2) 'Prostitution' means the offense defined in Section 43.02." 1973 Tex. Gen. Laws 958. This provision has remained unchanged. Tex. Pen. Code § 43.01 (West 1994).

This 1997 version of section 43.02(a)(1) was reenacted unchanged as a part of the 1994 Texas Penal Code. Act of May 29, 1993, 73d Leg., R. S., ch. 900, § 1.01, 1993 Tex. Gen Laws 3586, 3680-82. This version of 43.02(a)(1), under which appellant was prosecuted, provides:

> (a) A person commits an offense if he knowingly:
>
>> (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or
>>
>> (2) solicits another in a public place to engage with him in sexual conduct for hire.
>
> (b) An offense is established under Subsection (a)(1) whether the actor is to receive or pay a fee. An offense is established under Subsection (a)(2) whether the actor solicits a person to hire him or offers to hire the person solicited.
>
> (c) An offense under this section is a Class B misdemeanor, unless the actor has been convicted previously under this section, in which event it is a Class A misdemeanor.

Tex Pen. Code Ann. § 43.02 (West 1994).[4] The culpable mental state of "knowingly" was retained.[5]

---

[4] Only Subsection (c) of section 43.02 was amended in 2001. It provides:

> An offense under this section is a Class B misdemeanor; unless the actor has previously been convicted one or two times of an offense under this section in which event it is a Class A misdemeanor. If the actor has been convicted three or more times under this section the offense is a state jail felony.

Act of May 24, 2001, 77th Leg., R. S., ch. 987, § 1, 2001 Tex. Gen Law 2035. This amendment, of course, is not applicable to the instant case.

[5] Section 6.03 (b) of the Texas Penal Code provides:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge,

10

It is clear from the statute that there are three modes of the offense of prostitution under section 43.02(a)(1)—knowingly (1) offers to engage, (2) agrees to engage, or (3) engages in sexual conduct for a fee. "Each act is distinctive." *West v. State*, 626 S.W.2d 159, 166 (Tex. App.—Beaumont 1981, pet. ref'd). Thus, knowingly offering to engage or agreeing to engage in sexual conduct are two distinct means of committing prostitution under section 43.02(a)(1). *Milczanowiski v. State*, 645 S.W.2d 445, 446 (Tex. Crim. App. 1983).

In *Mattias*, a decision of which appellant bitterly complains, the female defendant was convicted of the distinct offense of knowingly offering to engage in sexual conduct for a fee. 731 S.W.2d at 936. The facts showed that the defendant and another woman from an escort service arrived at a condominium occupied by two undercover Dallas police officers who had called the escort service. The undercover officers were told that there was a $65.00 escort agency fee for each of the women. One of the officers asked defendant Mattias for "a head job," a deviate sexual intercourse. When she set the fee at $250, she was arrested. The defendant testified that she was a nude and lingerie model and felt unsafe after arriving at the condominium because of scattered beer cans and a disconnected telephone. She set a high fee so they could "get out of there." She stated that she had no intention of engaging in sexual conduct.

In a bench trial, the trial court found the defendant guilty but in a special finding found appellant did not intend to engage in the sexual act. The court of appeals reversed the conviction on

with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Tex. Pen. Code Ann. § 6.03 (b) (West 1994).

11

the basis of insufficient evidence holding that the trial court's finding of lack of intent negated the culpable mental state of "knowingly." *Mattias v. State*, 683 S.W.2d 789 (Tex. App.—Eastland 1984).

The Court of Criminal Appeals reversed the decision stating:

> A plain reading of the statute reveals that the particular offense charged is not a specific intent or result-type offense. *See generally*, Searcy and Patterson, Practice Commentary, V.T.C.A., Penal Code, § 6.03. A person may knowingly offer to engage in or agree to engage in sexual conduct for a fee and commit an offense under § 43.02(a)(1), supra, without having the intent to actually consummate the sexual conduct. In *Cardenas v. State*, 640 S.W.2d 291 (Tex.Cr.App.1982), this Court wrote, "The intent that must accompany future sexual contact need not accompany the offer or agreement to engage in sexual conduct." We hold that intent to consummate an offer or agreement to engage in sexual conduct is not an element of the offense of prostitution under § 43.02(a)(1), as charged in the information.

*Mattias*, 731 S.W.2d at 937. *See also Anguiano v. State*, 774 S.W.2d 344, 346 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (not necessary for defendants accused of prostitution to have intended that undercover officer, to whom prices were quoted, be recipient of sexual services for defendants to be found guilty of knowingly offering to engage or agreeing to engage in sexual conduct under section 43.02(a)(1)). In interpreting section 43.02(a)(1), the courts have consistently rejected appellant's claim that "intent" is a necessary element of prostitution.

It is presumed that the legislature is aware of the case law affecting or relating to the statutes. *Miller v. State*, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000). When the legislature meets after a particular statute has been judicially construed and does not change that statute, courts will presume the legislature intended that the same construction should continue to be applied to that statute. *Id.* (citing *Marin v. State*, 891 S.W.2d 267, 271-72 (Tex. Crim. App. 1994)). Moreover,

12

when a statute is reenacted without material change, it is generally presumed that the legislature knew and adopted or approved the interpretation placed on the original or an earlier act and intended that the new enactment should receive the same construction as the older one. *Miller*, 33 S.W.3d at 260.

The *Mattias* decision was handed down by the Court of Criminal Appeals on April 29, 1987, while the 70th Legislature was still in session. The legislature met again in 1989 and 1991 and adjourned without making any change in section 43.02(a)(1). In 1993, the 73rd Legislature enacted the 1994 Penal Code without any change in section 43.02(a)(1) as earlier noted. Under the foregoing authorities, we must presume that the legislature intended that the construction of the statute in *Mattias* was to be the interpretation to be given to the 1993 enactment under which appellant was prosecuted and convicted.

As a part of his argument under the second point of error, appellant also contends that the trial court *sua sponte* failed to define the word "agree" so as to require an intent to engage in sexual conduct. The term has not been statutorily defined in either section 1.07(a) or section 43.01[6] of the Penal Code or elsewhere in that code or the code of criminal procedure. In determining the plain meaning of the language of a statute, "[w]ords and phrases should be read in context and construed according to the rules of grammar and usage." Tex. Gov't Code Ann. § 311.011(a) (West 1998); *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996). Words not statutorily defined and which have not acquired a technical meaning should be given their ordinary meaning. *Garcia v. State*, 887 S.W.2d 846, 859 (Tex. Crim. App. 1994). No specific jury instructions are

---

[6] Tex Pen. Code Ann. §§ 1.07(a), 43.01 (West 1994).

13

needed regarding such terms. *Id*. Courts presume that jurors apply the ordinary meaning of such words. *Id*.

Appellant cites *Williams v. State*, 646 S.W.2d 221 (Tex. Crim. App. 1983), involving a conviction for conspiracy to commit aggravated kidnaping that was reversed because of insufficient evidence. It was not a jury charge error case. The criminal conspiracy statute in question required a specific intent to commit a felony, a culpable mental state unlike the instant case. The court in *Williams* found that the co-conspirator was a police informant and the particular agreement as required by section 15.02(3) of the Penal Code as an element of the offense was not shown. *Id*. at 224. *Williams* can be distinguished from the instant case by its facts and the law.

We reject appellant's claim that the trial court committed fundamental error in failing to charge the jury *sua sponte* on an additional culpable mental state of "intent" or in failing to define "agree" for the jury. No error being shown, *Almanza* is inapplicable. The second point of error is overruled.

### The Constitutional Question

Next, we shall consider appellant's initial contention that section 43.02(a)(1) is facially overbroad in violation of the First Amendment to the United States Constitution.

Recently in *State v. Wofford*, 34 S.W.2d 671 (Tex. App.—Austin 2000, no pet.), this Court discussed the standards for reviewing a constitutional claim.

> In determining a statute's constitutionality, we begin with a presumption of the statute's validity. *Ex parte Anderson,* 902 S.W.2d 695, 698 (Tex. App.—Austin 1995, pet. ref'd); *Skillern v. State*, 890 S.W.2d 849, 860 (Tex. App.—Austin 1994, pet. ref'd). We presume that the legislature did not act unreasonably or arbitrarily in enacting the statute and that it had due regard for constitutional requirements. *Ex*

14

*parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). It is the challenger's burden to show that the statue is unconstitutional. *Id*.; *Anderson*, 903 S.W.2d at 698, Every reasonable intendment and presumption is made in favor of the constitutionality and validity of the statute. *Skillern*, 890 S.W.2d at 860. The statute must be upheld if a reasonable construction can be ascertained which will render the statute constitutional and carry out the legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App.1979). Constitutional issues will not be decided upon a broader basis than the record requires. *State v. Garcia*, 823 S.W.2d 793, 799 (Tex.App.—San Antonio 1992, pet. ref'd).

*Id*. at 678.

The State has, within its police power, the right to protect its legitimate interests. *Kovacs v. Cooper*, 336 U.S. 77, 83 (1949); *Blanco v. State*, 761 S.W.2d 38, 40 (Tex. App.—Houston [14th Dist.] 1988, no pet.). "The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community." *Kovacs*, 336 U.S. at 83. The right of the State is limited only by individual constitutional rights, such as the First Amendment's right to free speech. *Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984). An attack on a statute as being constitutionally overbroad is normally and traditionally reserved for complaints concerning alleged First Amendment violations. *Bynum v. State*, 767 S.W.2d 679, 772 (Tex. Crim. App. 1989). The First Amendment is, of course, applicable to the states by virtue of the Fourteenth Amendment to the United States Constitution. *See Olvera v. State*, 806 S.W.2d 546, 548 n.2 (Tex. Crim. App. 1991) (citing *Gitlow v. United States*, 268 U.S. 652 (1925)); *see also Edwards v. South Carloina*, 372 U.S. 229, 235 (1963).

Appellant asserts that he has standing to challenge facially the overbreadth of section 43.02(a)(1), citing *Rabb v. State*, 730 S.W.2d 751, 752 (Tex. Crim. App. 1987). Appellant is correct.

15

An individual whose own activities may validly be prohibited is permitted nonetheless to challenge a statute as overbroad because it also threatens others not before the court. *Dubuisson v. State*, 572 S.W.2d 694, 696 (Tex. Crim. App. 1978). Thus, a criminal statute may be held facially invalid even though it may not be unconstitutional as applied to a defendant. *Gooding v. Wilson*, 405 U.S. 518, 521 (1992); *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). "The overbreadth doctrine has often been understood as an exception to the rule that individuals generally may not litigate the rights of third parties." Lawrence Tribe, *American Constitutional Law*, § 12-27 (1988); *see also Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998).

Although appellant has the necessary standing, his facial challenge to the statute is the most difficult challenge to mount successfully, as the challenger must demonstrate that the statute always operates unconstitutionally. *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) and *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (challenger must establish that no set of circumstance exists under which statute will be valid)).

Now that appellant's standing and burden have been established, the crucial question is whether the statute sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments. The doctrine of overbreadth is designed to protect First Amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of that freedom. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611-13 (1973).

In discussing this doctrine, the court in *Smith v. State*, 959 S.W.2d 1 (Tex. App.—Waco 1997, pet. ref'd), stated:

> A statute is impermissibly overbroad when, "in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989) (quoting *Clark v. State*, 665 S.W.2d 476, 482 (Tex.Crim.App.1984)). However, even if the statute reaches both lawful and unlawful conduct, it will not be considered overbroad unless it *substantially* interferes with protected conduct. *Bynum*, 767 S.W.2d at 772-73 (emphasis added). "[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself." *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir.1990) (quoting *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.1970)).

*Id*. at 24.

Appellant acknowledges that Texas has a legitimate interest in preventing prostitution, but argues that if the statutory words of "offer or agree" mean what the *Mattias* decision says, a person who is only joking or pretending to agree is guilty of prostitution under section 42.03(a)(1), and that the statute should be "narrowly tailored" to prohibit only unprotected speech. He contends that words like "okay" or "sure" are harmless absent any criminal intent, and since section 42.03(a)(1) does not impose the culpable mental state of intent the statute is unconstitutionally overbroad. This is the same argument previously rejected but presented again in apparent constitutional garb.

When governmental action implicates First Amendment rights, courts must balance those individual rights against governmental interest in limiting the activity in question. *Georgene v. Amchen Prods,. Inc*., 160 F.R.D. 478, 512 (E.D. Pa. 1995). The protection available for the freedom of expression turns on the nature both of the expression and of the governmental interest served by the regulation. *Id*. When an overbreadth claim is presented, it is the duty of the courts to

17

determine which of the conflicting interests demands the greater protection under the particular circumstances. *American Communication Ass'n, C.I.O. v. Douds*, 339 U.S. 383, 399 (1950).

The First Amendment to the United States Constitution provides that Congress shall make no law abridging the freedom of speech, press, or assembly. It has, however, long been established that these freedoms are dependent upon the power of constitutional government to survive. *Douds*, 339 U.S. at 394. These freedoms "do not give absolute protection to every individual to speak whenever or wherever he pleases, or to use any form of address in any circumstances that he chooses." *Cohen v. California*, 403 U.S. 15, 19 (1971). The right to free speech is not an unlimited, unqualified right. On occasion the societal value of speech must be subordinated to other values and considerations. *Dennis v. United States*, 341 U.S. 499, 503 (1951).

Statutes regulating activities in order to protect public health are considered to be a lawful exercise of the police power of a state. Norman J. Singer, *Sutherland Statutory Construction,* § 71.02 (5th ed. 1992). It has been held that the enactment of section 43.02 was to protect the health, safety and welfare of the population and was within the discretion of the legislature and the police power of the state. *Tisdale v. State*, 640 S.W.2d 400 (Tex. App.—San Antonio 1982, pet. ref'd). In speaking of section 43.02 it has been stated:

> Regulation of prostitution is important to the substantial government interest of protecting citizens' health and safety. The regulation is not related to the suppression of free expression and the incidental restriction is no greater than necessary to further the substantial government interest. *See Tisdale v. State*, 640 S.W.2d 409 (Tex. App.—San Antonio 1982, pet. ref'd).

*Young Sun Lee v. State*, 681 S.W.2d 656, 662 (Tex. App.—Houston [14th Dist.] 1984, pet ref'd).

18

Thus, it is clear that the contention appellant raises has been decided to the contrary in *Young Sun Lee*, 681 S.W.2d at 662. In *Tisdale*, the court also rejected the claim that section 43.02(a)(1) was constitutionally overbroad as to deprive citizens of their right to privacy. *Id.*, 640 S.W.2d at 413-14. The statute has also withstood an attack against a claim that it was constitutionally vague. *McCarty v. State*, 616 S.W.2d 194, 196 (Tex. Crim. App. 1981). Moreover, it has been determined that the word "offer" as used in section 43.02(a)(1) is not constitutionally vague. *Ozack v. State*, 646 S.W.2d 941, 942 (Tex. Crim. App. 1983); *McCarty*, 616 S.W.2d at 196.

In balancing the interests, we conclude that the State's compelling interest in quelling prostitution outweighs the de minimis interest of an individual in uttering certain words as urged by appellant. We reject appellant's contention that 42.03(a)(1) is constitutionally overbroad as he claims. The first point of error is overruled.

The judgment is affirmed.

_____

—

John F. Onion, Jr., Justice

Before Justices Kidd, Puryear and Onion[*]

Affirmed

Filed:   January 17, 2002

Publish

*   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).