COURT 
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-515-CR
  
  
THE 
STATE OF TEXAS                                                                  STATE
 
V.
 
STEPHEN 
JOHN HOLCOMBE                                                      APPELLEE
   
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        The 
State appeals the trial court’s order granting Appellee Stephen John 
Holcombe’s motion to suppress.  We reverse and remand.
Factual and Procedural Background
        On 
May 19, 2002, at approximately 2:30 a.m., Bedford police officer Joseph Riley 
and his partner William Mack responded to a call regarding a loud-noise 
disturbance.  According to Riley, the officers were responding for the 
second time that evening to complaints made about a loud party at a house 
located on Vicksburg Drive.  Riley testified that since it was their second 
visit to the scene, the officers issued a citation for violating Bedford’s 
noise ordinance, which states:

The 
following sounds are hereby determined to be specific noises which can 
constitute a noise disturbance, and violations of this article are hereby 
defined. A noise does not have to exceed the specifications for environmental 
sound levels contained in section 12-53 in order to constitute a violation of 
this section.
 
        . 
. . .
 
(2) 
Radios, television sets, musical instruments and similar devices. 
Operating or permitting to be operated any radio receiving set, musical 
instrument, television, phonograph, drum or other machine or device for the 
production or reproduction of sound in such a manner as to violate the sound 
levels of this article or to unreasonably disturb or interfere with the peace, 
comfort and repose of neighboring persons of ordinary sensibilities, unless a 
permit of variance is first obtained.
  
Bedford, Tex., Code of Ordinances ch. 54, art. II, § 36 (2002).[1]
 
        After 
issuing the citation, Riley stated that as he headed back to his patrol car, he 
noticed Appellee’s white Mercedes approximately seventy-five yards away 
playing loud music.  Riley testified that Appellee’s music was louder 
than the noise at the party for which he had just written a citation and that 
the Bedford noise ordinance is a general noise ordinance that is not specific to 
residences.  Mack testified that he was between one hundred twenty and one 
hundred fifty feet away from the car and described the music as “extremely” 
loud.  Because the officers were called to the neighborhood in response to 
a loud noise disturbance call and Riley believed Appellee was violating the 
Bedford noise ordinance, Riley flagged down the car and asked Appellee to turn 
down his music.  Riley, speaking to Appellee through the sunroof of the car 
because the other windows were rolled up, noticed a strong odor of an alcoholic 
beverage and that Appellee’s speech was slurred.  Riley also testified 
that Appellee’s eyes appeared to be bloodshot.  According to Riley, 
Appellee appeared to be under the influence of alcohol and he intended to keep 
speaking to him, but Appellee said he was sorry and drove off.  Riley 
radioed ahead to Mack, who was about seventy-five yards down the street and 
asked him to stop Appellee.  Appellee was arrested for driving while 
intoxicated.
        After 
a hearing on November 21, 2002, the trial court granted Appellee’s motion to 
suppress and announced on the record that the grounds for suppression were that 
the Bedford noise ordinance is unconstitutional because it is overbroad and does 
not place the public on sufficient notice.  The trial court subsequently 
adopted the State’s proposed order, which stated that the trial court’s 
suppression was based on the fact that the ordinance is overbroad.  This 
appeal ensued.
Standard of Review
        A 
trial court's ruling on a motion to suppress evidence will not be set aside 
absent an abuse of discretion.  Taylor v. State, 945 S.W.2d 295, 297 
(Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).  We review a trial 
court's ruling on a motion to suppress using the bifurcated standard of review 
set forth in Guzman v. State.  955 S.W.2d 85 (Tex. Crim. App. 
1997).  We defer to the trial court's determination of the historical facts 
and rulings on mixed questions of law and fact. Id. at 87-88; Morfin 
v. State, 34 S.W.3d 664, 666 (Tex. App.—San Antonio 2000, no pet.).  
However, we decide de novo whether the trial court erred in misapplying the law 
to the facts.  Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. 
App. 2000); Morfin, 34 S.W.3d at 666.
        Imprecise 
laws can be attacked on their faces under two different doctrines.  City 
of Chicago v. Morales, 527 U.S. 41, 52, 119 S. Ct. 1849, 1857 (1999).  
First, the overbreadth doctrine permits the facial invalidation of laws that 
inhibit the exercise of First Amendment rights if the impermissible applications 
of the law are substantial when “judged in relation to the statute’s plainly 
legitimate sweep.”  Id.; Broadrick v. Oklahoma, 413 U.S. 
601, 612-15, 93 S. Ct. 2908, 2916-18 (1973).  Second, even if an enactment 
does not reach a substantial amount of constitutionally protected conduct, it 
may be impermissibly vague because it fails to establish standards for the 
police and public that are sufficient to guard against the arbitrary deprivation 
of liberty interests.  Morales, 527 U.S. at 52, 119 S. Ct. at 1857; Kolender 
v. Lawson, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858 (1983).
Overbreadth
        In 
the State’s first four points of error, it argues that the trial court erred 
in concluding that the Bedford noise ordinance is constitutionally 
overbroad.  It is within the State’s police power to protect the 
tranquility, quiet enjoyment, and well-being of the community.  Frieling 
v. State, 67 S.W.3d 462, 472 (Tex. App.—Austin 2002, pet. ref’d).  
This right of the State is limited only by individual constitutional rights, 
such as First Amendment free speech.  Blanco v. State, 761 S.W.2d 
38, 40 (Tex. App.—Houston [14th Dist.] 1988, no pet.).  Consequently, in 
analyzing a facial challenge to the overbreadth of a law, we first determine if 
the statute reaches a substantial amount of constitutionally protected 
conduct.  Village of Hoffman Estates v. The Flipside, Hoffman Estates, 
Inc., 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982); Blanco, 761 
S.W.2d at 40.  A statute will not be invalidated for overbreadth merely 
because it is possible to imagine some unconstitutional applications.  Hoffman, 
455 U.S. at 494, 102 S. Ct. at 1191.  Rather, the wide-reaching effects of 
striking down a statute on its face, at the request of one whose own conduct may 
be punished despite the First Amendment, has caused the Supreme Court to 
recognize that the “overbreadth doctrine is ‘strong medicine’” and 
[courts should] employ it “with hesitation, and then ‘only as a last 
resort.’”  New York v. Ferber, 458 U.S. 747, 769, 102 S. Ct. 
3348, 3361 (1982) (quoting Broadrick, 413 U.S. at 613, 93 S. Ct. at 
2916).
        We 
have reviewed several federal and state cases dealing with the constitutionality 
of noise ordinances, first turning to the United States Supreme Court’s 
decision in Grayned v. City of Rockford. 408 U.S. 104, 92 S. Ct. 2294 
(1972).  That case involved equal rights protests by black students at a 
high school in Illinois during the 1960s. Id. at 105, 92 S. Ct. at 
2297.  One of the students, Richard Grayned, was found guilty of violating 
the city’s noise ordinance.  Id. at 106, 92 S. Ct. at 2298.  
The Rockford ordinance read:  
No 
person, while on public or private grounds adjacent to any building in which a 
school or any class thereof is in session, shall willfully make or assist in the 
making of any noise or diversion which disturbs or tends to disturb the peace or 
good order of such school session or class thereof.
 
Id. 
at 107-08, 92 S. Ct. at 2298.  Grayned raised claims of both vagueness and 
overbreadth to attack his conviction. Id. at 108, 114, 92 S. Ct. at 2298, 
2302.  In holding that the Rockford ordinance was not invalid on its face, 
the Grayned court noted that the city had a compelling interest in 
preserving “an undisrupted school session conducive to the students’ 
learning.”  Id. at 119, 92 S. Ct. at 2305.  The ordinance, 
although restrictive of expressive behavior during the school session, was not 
overbroad because: 
 
Rockford 
punishes only conduct which disrupts or is about to disrupt normal school 
activities. . . . Peaceful picketing which does not interfere with the ordinary 
functioning of the school is permitted.  And the ordinance gives no license 
to punish anyone because of what he is saying.
 
  
Id. 
at 119-20, 92 S. Ct. at 2305.  Similarly, the Bedford ordinance restricts 
only those noises that “unreasonably disturb or interfere with the peace, 
comfort and repose of neighboring persons of ordinary sensibilities”; it is 
neutral regarding content and location.
        In 
Ward v. Rock Against Racism, the Supreme Court upheld New York City’s 
volume control regulations for public outdoor concerts despite clear First 
Amendment protection for music because the city’s interest in tranquility 
allowed it to impose reasonable restrictions.  491 U.S. 781, 790, 109 S. 
Ct. 2746, 2753 (1989).  According to the Ward court, “A regulation 
that serves purposes unrelated to the content of expression is deemed neutral, 
even if it has an incidental effect on some speakers or messages but not 
others.”  Id. at 791, 109 S. Ct. at 2754.  Under Ward, 
Bedford may impose reasonable restrictions on the time, place, or manner of 
constitutionally protected speech—even in a public forum.  Id. at 
791, 109 S. Ct. at 2753.  A valid time, place, and manner restriction, 
however, must be content-neutral.  Id.  A restriction is 
content-neutral so long as it is “justified without reference to the content 
of the regulated speech.”  Id. (quoting Clark v. Cmty. for 
Creative Non-Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069 (1984)).
        Bedford’s 
stated policy is:
 
to 
minimize the exposure of citizens to excessive noise and to protect, promote and 
preserve the public health, comfort, convenience, safety and welfare. It is the 
express intent of the city to control the level of noise in a manner which 
promotes commerce; protects the sleep and repose of citizens; promotes the use, 
value and enjoyment of property; and preserves the quality of the environment.
 
Bedford, Tex., Code of Ordinances ch. 54, art. II, § 32 
(2002).  As we previously noted, the Bedford noise ordinance does not 
reference content.  Bedford simply desires to protect the tranquility of 
its citizens; and it is well established that the government may, within 
reasonable bounds regulate audible expression in its capacity as noise.  City 
of Ladue v. Gilleo, 512 U.S. 43, 48, 114 S. Ct. 2038, 2041 (1994) (citing Ward, 
491 U.S. at 803, 109 S. Ct. at 2760; Kovacs v. Cooper, 336 U.S. 77, 89, 
69 S. Ct. 448, 455 (1949) (Frankfurter, J., concurring)).
        Texas 
courts have also addressed the constitutionality of noise ordinances.  Thompson 
v. State, No. 04-00-00348-CR, 2001 WL 38111, at *2 (Tex. App.—San Antonio 
Jan. 17, 2001, pet. ref’d) (not designated for publication), cert. denied, 
534 U.S. 1129 (2002) (holding that the Texas unreasonable noise statute does not 
threaten constitutional conduct); Schrader v. State, No. 03-99-00780-CR, 
2000 WL 1227866, at *2 (Tex. App.—Austin Aug. 31, 2000, no pet.) (not 
designated for publication), cert. denied, 532 U.S. 1040 (2001) (holding 
that city noise ordinance does not reach a substantial amount of 
constitutionally protected conduct); Blanco, 761 S.W.2d at 41 (holding 
that the Texas unreasonable noise statute does not reach a substantial amount of 
constitutionally protected conduct).  In 1988, the Houston Fourteenth Court 
of Appeals upheld section 42.01(a)(5) of the Texas Penal Code, a disorderly 
conduct statute, which stated:
 
A 
person commits an offense if he intentionally or knowingly . . . makes 
unreasonable noise in a public place or in or near a private residence that he 
has no right to occupy.

Act 
of May 23, 1983, 68th Leg., R.S., ch. 800, § 1, sec. 42.01, 1983 Tex. Gen. Laws 
4641, 4641 (amended 1991) (current version at Tex. Penal Code Ann. § 
42.01(a)(5) (Vernon 2003)); Blanco, 761 S.W.2d at 40, 42.  The 
appeals court held that the statute fell within the State’s police power to 
protect the tranquility of the community and that the breadth of the statute did 
not substantially impact constitutional rights.  Blanco, 761 S.W.2d 
at 40.
        Appellee 
argues that the Texas disorderly conduct statute can be distinguished from the 
Bedford ordinance because the scope of the Texas statute is limited in its 
encroachment on constitutionally protected conduct by a sister statute, which 
reads in pertinent part:
 
If 
conduct that would otherwise violate Section 42.01(a)(5) . . . consists of 
speech or other communication, of gathering with others to hear or observe such 
speech communication, or of gathering with others to picket or otherwise express 
in a nonviolent manner a position on social, economic, political, or religious 
questions, the actor must be ordered to move, disperse, or otherwise remedy the 
violation prior to his arrest if he has not yet intentionally harmed the 
interests of others which [42.01(a)(5)] seek[s] to protect.

Tex. Penal Code Ann. § 42.04 
(Vernon 2003).  According to Appellee, the Texas statute affords adequate 
safeguards for constitutionally protected conduct, amplified by the specific 
intent element incorporated into section 42.01, that the Bedford ordinance does 
not.  Consequently, Appellee asserts that Blanco cannot be relied 
upon as precedent for upholding the Bedford ordinance.  The court of 
appeals in Blanco, however, noted in its opinion that “[e]ven without 
the speech defense of § 42.04, courts have held that unreasonable noise is not 
protected speech.”  Blanco, 761 S.W.2d at 40 (citing Commonwealth 
v. Mastrangelo, 489 Pa. 254, 263, 414 A.2d 54, 58, appeal dismissed, 
449 U.S. 894 (1980); Reeves v. McConn, 631 F.2d 377, 378 (5th Cir. 1980); 
Pringle v. Court of Common Pleas, 778 F.2d 998, 999 (3rd Cir. 1985)).
        In 
2000, the Austin Court of Appeals, in an unpublished opinion, addressed the 
constitutionality of Austin’s noise ordinance, which provided in relevant 
part:
 
(a) 
It is unlawful for any person operating or controlling a motor vehicle in either 
a public or private place within the city to operate any sound amplifier which 
is part of, or connected to, any radio, stereo receiver, compact disc player, 
cassette tape player, or other similar device in the motor vehicle, in such a 
manner that, when operated, it is audible at a distance of thirty (30) feet or, 
when operated, causes a person to be aware of the vibration accompanying the 
sound at a distance of thirty (30) feet from the source.
 
(b) 
The provisions of this section do not apply to:
 
                         . 
. . .
 
(2) 
Motor vehicle[s] used for business or political purposes, properly permitted, 
which in the normal course of business use sound making devices.

Schrader, 
2000 WL 1227866, at *1 (quoting Austin, Tex., Municipal Code ch. 10-5, art. III, § 10-5-40 
(1992)).  In that case, Schrader was placed on two years’ deferred 
adjudication after pleading guilty to possession of less than one gram of 
cocaine, which was discovered as a result of police enforcement of the Austin 
noise ordinance.  The Austin Court of Appeals, recognizing that the 
question is whether the ordinance reaches a substantial amount of 
constitutional conduct, declined to strike down the ordinance. Id. at 
*4.  The court noted that the ordinance does not restrict any expression or 
communication beyond limiting its loudness.  Id.  The court 
reasoned that although the ordinance may restrict some First Amendment activity, 
the ordinance is justified by the city’s interest in a peaceful environment. Id.
        In 
2001, the San Antonio Court of Appeals revisited the constitutionality of the 
Texas noise ordinance addressed in Blanco. Thompson, 2001 WL 38111, at 
*2.  The court reiterated that other courts have held that unreasonable 
noise is not protected speech and concluded that section 42.01(a)(5) does not 
threaten constitutional conduct or speech.  Id. (citing Blanco, 
761 S.W.2d at 40-41).
        We 
recognize that both Schrader and Thompson are unpublished and do 
not constitute binding precedent, but find their reasoning persuasive 
nonetheless—especially in light of other cases upholding noise ordinances as 
constitutional.  See Grayned, 408 U.S. at 119-20, 92 S. Ct. at 2305; 
Kovacs, 336 U.S. at 83, 69 S. Ct. at 451; Reeves, 631 F.2d at 
382.  We therefore conclude that the Bedford noise ordinance does not reach 
a substantial amount of First Amendment activity and is not constitutionally 
overbroad.  As with the ordinance addressed in Schrader, the Bedford 
noise ordinance is content-neutral and regulates only the volume of expression.
Vagueness
        In 
the State’s fifth and sixth points of error, it argues that the Bedford noise 
ordinance is not unconstitutionally vague.  Although the State recognizes 
in its brief that the trial court granted Appellee’s motion to suppress based 
only on a finding of overbreadth, the State addresses vagueness based on a case 
in which both the court of appeals and the court of criminal appeals considered 
a vagueness challenge to the penal code even though the trial court’s decision 
turned on the overbreadth challenge.  See State v. Markovich, 34 
S.W.3d 21, 25 n.2 (Tex. App.—Austin 2000), aff’d, 77 S.W.3d 274 (Tex. 
Crim. App. 2002).
        In 
addition to being limited by free speech protections, Bedford’s police power 
to protect a peaceful environment is further limited by the requirement that a 
criminal statute must give a person of ordinary intelligence what conduct is 
prohibited.  See Papachristou v. City of Jacksonville, 405 U.S. 156, 
162, 92 S. Ct. 839, 843 (1972);  Cuellar v. State, 70 S.W.3d 815, 
822 (Tex. Crim. App. 2002) (Cochran, J., concurring); Morgan v. State, 
557 S.W.2d 512, 514 (Tex. 1977).  If a statute does not substantially 
implicate constitutionally protected conduct or speech, it is valid unless it is 
impermissibly vague in all applications.  Hoffman Estates, 455 U.S. 
at 494-95, 102 S. Ct. at 1191.  The vagueness doctrine is based on fairness 
and “is not a principle designed to convert into a constitutional dilemma the 
practical difficulties in drawing criminal statutes both general enough to take 
into account a variety of human conduct and sufficiently specific to provide 
fair warning that certain kinds of conduct are prohibited.”  Colten v. 
Commonwealth of Kentucky, 407 U.S. 104, 110, 92 S. Ct. 1953, 1957 (1972).
        Vagueness 
may invalidate a criminal law for either of two independent reasons.  
First, the law may fail to provide the kind of notice that will enable ordinary 
people to understand what conduct it prohibits; second, it may authorize and 
even encourage arbitrary and discriminatory enforcement.  See Kolender, 
461 U.S. at 357, 103 S. Ct. at 1858.  In order to pass a vagueness 
challenge, a criminal statute must give a person of ordinary intelligence a 
reasonable opportunity to know what is prohibited.  Grayned, 408 
U.S. at 108, 92 S. Ct. at 2298-99; Long v. State, 931 S.W.2d 285, 287 
(Tex. 1996); Sisk v. State, 74 S.W.3d 893, 901 (Tex. App.—Fort Worth 
2002, no pet.).  Furthermore, where First Amendment freedoms are 
implicated, the law must be sufficiently definite to avoid chilling protected 
expression. Long, 931 S.W.2d at 287; Sisk, 74 S.W.3d at 901.  
A statute is not unconstitutionally vague merely because it fails to define 
words or phrases.  Engelking v. State, 750 S.W.2d 213, 215 (Tex. 
Crim. App. 1988); Ahearn v. State, 588 S.W.2d 327, 337-38 (Tex. Crim. 
App. [Panel Op.] 1979).  If the statute affects communication protected by 
the First Amendment, a defendant has standing to challenge the statute as vague 
on its face, even if it does not affect his own First Amendment rights.  Young 
v. Am. Mini Theatres, Inc., 427 U.S. 50, 59-60, 96 S. Ct. 2440, 2447 (1976); 
Long, 931 S.W.2d at 287-88.
        Appellee 
argues that the meaning of the phrase “unreasonably disturbs or interfere with 
the peace, comfort and repose of neighboring persons of ordinary sensibilities, 
unless a permit of variance is first obtained,” which is included in the 
ordinance, is left to the imagination of the police, public, and the 
courts.  Specifically, Appellee appears to challenge the terms 
“persons,” “interfere,” “repose,” and “permit of variance.”
        Words 
defined in dictionaries with meanings so well known as to be understood by a 
person of ordinary intelligence have been held not to be vague and 
indefinite.  Floyd v. State, 575 S.W.2d 21, 23 (Tex. Crim. App. 
[Panel; Op.] 1978), appeal dism'd, 442 U.S. 907 (1979); Ex parte 
Anderson, 902 S.W.2d 695, 700 (Tex. App.—Austin 1995, pet. ref’d).  
What we must do, then, is “to find the meaning of some not very difficult 
words.”  N. Sec. Co. v. United States, 193 U.S. 197, 401, 24 S. 
Ct. 436, 468 (1904) (Holmes, J., dissenting).  First, “person” is 
defined by section 54-31 of the Bedford municipal code as “any individual, 
firm, association, partnership, corporation or any other entity, public or 
private.” Bedford, Tex., Code of Ordinances ch. 54., art. II, § 31 
(2002).  This definition is more than sufficiently clear to place a person 
of ordinary intelligence on notice of whose comfort and repose may not be 
unreasonably disturbed.  Further, the term “persons” is limited to only 
those persons of ordinary sensibilities, i.e., an objective reasonable person 
standard.
        As 
recognized by other Texas courts, the terms “interfere” and “repose” 
also have commonly understood meanings.  Ex parte Hunter, 188 S.W.2d 
162, 163 (Tex. Crim. App. 1945) (stating, “We are unable to sustain the 
relator's contention that the ordinance is indefinite in that it does not define 
what is meant by 'frequent or long continued noise,' 'comfort and repose,' and 
'neighborhood.'  Such terms are of general use and may be understood.”) 
(orig. proceeding); Markovich, 34 S.W.3d at 25 (stating that term 
“interfere” has a commonly understood meaning); Morehead v. State, 
746 S.W.2d 830, 837 (Tex. App.—Dallas 1988), rev’d on other grounds, 
807 S.W.2d 577 (Tex. Crim. App. 1991) (holding that term “interfere” in 
statute prohibiting the disruption of a lawful meeting was not vague); Winthrop 
v. State, 735 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1987, pet. 
ref’d) (stating term “interfere” in child enticing statute was not so 
vague as to violate state and federal due process provisions).
        Finally, 
Appellee argues that the ordinance is unclear as to the criteria for obtaining a 
“permit of variance.”  The Bedford municipal code, however, extensively 
describes the process and criteria for obtaining a permit of variance. Bedford, Tex., Code of Ordinances ch. 54, art. II, § 38 
(2002).  For example, section 54-38 of the code authorizes the city manager 
to grant permits if it is found:
 
a. 
That additional time is necessary for the applicant to alter or modify the 
activity or operation to comply with this article; or
 
b. 
That the activity, operation or noise source will be of temporary duration and 
cannot be done in a manner that would comply with other provisions of this 
article; and
 
c. 
That no other reasonable alternative is available to the applicant; and
 
d. 
That the city may prescribe any conditions or requirements deemed necessary to 
minimize adverse effects upon the community or the surrounding neighborhood.

Id.
        Appellee 
additionally argues that the Bedford noise ordinance contains no specific and 
objective criteria for determining if any particular noise was too loud.  
We disagree.  The ordinance’s reference to “neighboring persons of 
ordinary sensibilities” and ban against noise that is unreasonable establish 
an objective reasonable person standard.  This objective standard ensures 
that those of ordinary intelligence have a reasonable opportunity to know what 
is prohibited.  We conclude that the Bedford noise ordinance adequately 
describes the prohibited conduct and does not permit arbitrary or discriminatory 
enforcement. We sustain the State’s fifth and sixth points of error.
The Reasonableness of the Stop
        In 
the State’s seventh and final point of error, it argues that the trial court 
erred in granting the motion to suppress because the stop of Appellee’s 
vehicle was reasonable.  Because we sustain the State’s overbreadth and 
vagueness points, we do not address the State’s seventh point.  See 
Tex. R. App. P. 47.1.
Conclusion
        Having 
sustained Appellant’s first six points, we reverse the trial court’s 
judgment and remand this case for a trial on the merits.
  
  
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
 
 
PANEL 
B:   DAUPHINOT, HOLMAN, and McCOY, JJ.
 
DAUPHINOT, 
J. filed a dissenting opinion.
 
PUBLISH
 
DELIVERED: 
April 22, 2004

 
COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-515-CR
 
  
THE STATE OF TEXAS                                                                  STATE
 
V.
 
STEPHEN JOHN HOLCOMBE                                                      APPELLEE
 
------------
 
FROM COUNTY CRIMINAL COURT NO. 
9 OF TARRANT COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        Although 
the majority opinion is thoughtfully and carefully researched and written, I 
must respectfully dissent because the majority writes to reverse the 
well-founded decision of the trial judge.
        In 
reviewing the trial judge’s ruling, we apply a de novo standard of review as 
to questions of law and afford almost total deference to the trial judge’s 
determination of facts.[1]  Moreover, if the 
trial court's ruling on a matter of law is correct under any theory of law, even 
if the trial court gives the wrong reason for its ruling, we must affirm the 
trial court's decision.[2]
        In 
May v. State,[3] the Texas Court of Criminal 
Appeals held that former section 42.07 of the Texas Penal Code, prior to its 
amendment in 1983, was unconstitutional.  As the May opinion 
provides, that former statute read, in pertinent part:

(a) 
A person commits an offense if he intentionally:
 
        . 
. .
 
(2) 
threatens, by telephone or in writing, to take unlawful action against any 
person and by this action intentionally, knowingly, or recklessly annoys or 
alarms the recipient or intends to annoy or alarm the recipient; or
 
(3) 
places one or more telephone calls anonymously, at an unreasonable hour, in an 
offensive and repetitious manner, or without a legitimate purpose of 
communication and by this action intentionally, knowingly, or recklessly annoys 
or alarms the recipient.[4]
 
        The 
May Court, citing Kramer v. State, [5] 
concluded that the statute was void for vagueness because of its failure to 1) 
adequately define what annoys and alarms people and 2) specify whose 
sensitivities must be offended.[6]
        The 
ordinance now before us provides in pertinent part that a “noise 
disturbance” is
  
[o]perating 
or permitting to be operated any radio . . . in such a manner as to violate the 
sound levels of this article or to unreasonably disturb or interfere with the 
peace, comfort and repose of neighboring persons of ordinary sensibilities, 
unless a permit of variance is first obtained.[7]

        The 
Bedford police officers variously described the music from Appellee’s radio as 
“so loud,” played at an extremely high level,” and louder than the noise 
at the party.  The officer who stopped Appellee’s car said he stopped 
Appellee because he believed that Appellee was violating the Bedford noise 
ordinance.
        Our 
sister court in Houston has pointed out:

All 
criminal laws must give fair notice to the populace as to what activity is made 
criminal so that individuals have fair warning of what is forbidden.  
Criminal statutes must provide an objective standard by which a person's conduct 
can be measured.  A statute which forbids or requires the doing of an act 
in terms so vague that men of common intelligence must necessarily guess at its 
meaning and differ as to its application violates the first essential of due 
process of law.
 
To 
determine whether a law provides fair notice requires a two-step process.  
First, we must determine whether appellant, as an ordinary person, received 
sufficient information from the statute to understand exactly what conduct is 
prohibited so that she could act in a lawful manner.  Second, we must 
determine whether [the law] provides sufficient notice of the prohibited conduct 
to law enforcement personnel, so that appellant is not arbitrarily or 
discriminatorily prosecuted by the State or convicted by the jury.[8]

        The 
standard for determining the vagueness issue was established in City of 
Jacksonville, in which the United States Supreme Court held that a statute 
is void for vagueness when it fails to give a person of ordinary intelligence 
fair notice that his contemplated conduct is forbidden, it encourages arbitrary 
and erratic arrests and convictions, makes criminal those activities which by 
modern standards are normally innocent, and places almost unfettered discretion 
in the hands of the police.[9]
        In 
the case now before this court, the trial judge announced that the ordinance in 
question is unconstitutionally overbroad and void for vagueness.  The 
findings of fact and conclusions of law that appear in the record address only 
the overbreadth holding.  It is clear from reading the record as a whole 
that the trial judge was concerned that the ordinance was actually 
unconstitutionally vague for its failure to afford fair notice of the prohibited 
conduct and its failure to establish objective standards for determining whether 
a violation has occurred.  The consequence of such failures is to leave to 
the police officers the unbridled discretion to judge whether a violation of the 
ordinance has occurred.
        We 
cannot tell from the record how loudly the radio was playing, except that it was 
so loud, played at an extremely high level, or could be heard at a particular 
distance.  An ordinance that prohibits noise above a certain decibel level 
or that can be heard at a specific distance under specific circumstances 
provides objective standards.  The Bedford ordinance does not.  
Whether a violation of the Bedford ordinance occurs depends only on the police 
officers’ determination of what is too loud and what unreasonably disturbs or 
interferes with the peace, comfort, and repose of neighboring persons.  
Indeed, in the case before us, the police officers alone determined who were 
“neighboring persons.”
        The 
Bedford ordinance appears to be constitutionally infirm for the very reasons the 
Texas Court of Criminal Appeals held the telephone harassment statute void for 
vagueness in May, and for similar reasons supporting the Supreme 
Court’s holding in City of Jacksonville.  I would hold that the 
trial court did not err in declaring the Bedford ordinance unconstitutional and 
granting Appellee’s motion to suppress.  Because the majority holds that 
the trial court did err, I must respectfully dissent.

 
                                                  LEE 
ANN DAUPHINOT 
                                                  JUSTICE
 
 
PUBLISH
 
DELIVERED: April 22, 2004

NOTES
MAJORITY OPINION NOTES:
1.  
At the time of Appellant’s arrest, a prior version of the Bedford noise 
ordinance was in effect.  The current version, enacted only nine days 
later, differs only in its references to other “articles” within the 
ordinance whereas the prior version uses the term “chapters.”  For 
clarity, we will refer to the current version of the Bedford ordinance.  See 
Bedford, Tex., Code 1969 § 12-50-12-57 (recodified at Bedford, Tex., Code of Ordinances ch. 54, art. II (2002)).
  
DISSENTING OPINION NOTES:
1.  
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
2.  
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Couchman 
v. State, 3 S.W.3d 155, 158 (Tex. App.—Fort Worth1999, pet. ref’d); Pettigrew 
v. State, 908 S.W.2d 563, 568 (Tex. App.—Fort Worth 1995, pet. ref'd); see 
also In re ExxonMobil Corp., 97 S.W.3d 353, 365 (Tex. App.—Houston [14th 
Dist.] 2003, orig. proceeding); Luxenberg v. Marshall, 835 S.W.2d 136, 
141-42 (Tex. App.—Dallas 1992, orig. proceeding).
3.  
765 S.W.2d 438, 440 (Tex. Crim. App. 1989) (op. on reh’g).
4.  
Id. at 439.
5.  
605 S.W.2d 861 (Tex. Crim. App. [Panel Op.] 1980).
6.  
May, 765 S.W.2d at 440.
7.  
Bedford, Tex., Code 1969 § 12-55 (recodified at Bedford, Tex., Code of Ordinances ch. 54, art. II, § 36 
(2002)).
8.  
Weyandt v. State, 35 S.W.3d 144, 155 (Tex. App.—Houston [14th 
Dist.] 2000, no pet.) (citations omitted).
9.  
Papachristou v. City of Jacksonville, 405 U.S. 156, 162-71, 92 S. Ct. 
839, 843-48 (1972).