

**COURT OF CRIMINAL APPEALS**
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
ELSA ALCALA
BERT RICHARDSON
KEVIN P. YEARY
DAVID NEWELL
JUDGES

ABEL ACOSTA
CLERK
(512) 463-1551

SIAN SCHILHAB
GENERAL COUNSEL
(512) 463-1597

FILED IN COURT OF APPEALS
12th Court of Appeals District
APR 28 2016
TYLER TEXAS
PAM ESTES, CLERK

April 27, 2016

Janice G. Staples
District Clerk Anderson County
500 North Church Street Room 18
Palestine, TX 75801
* DELIVERED VIA E-MAIL *

Doug Lowe
District Attorney Anderson County
500 North Church Street
Palestine, TX 75801
* DELIVERED VIA E-MAIL *

Melinda Fletcher
Special Prosecution Unit
P.O. Box 1744
Amarillo, TX 79105
* DELIVERED VIA E-MAIL *

Pam Estes
12th Court Of Appeals Clerk
1517 W. Front, Room 354
Tyler, TX 75701
* DELIVERED VIA E-MAIL *

Criminal District Court No. 3 Presiding Judge I
401 W Belknap, 6th Fl.
Ft. Worth, TX 76196-0243
* DELIVERED VIA E-MAIL *

Kenneth D. Nash
PO Box 4005
Huntsville, TX 77342-4005
* DELIVERED VIA E-MAIL *

**Re: SCHLITTLER, DAVID**
**CCA No.** PD-1505-14
**Trial Court Case No.** 30390

**COA No.** 12-13-00269-CR

The court has issued an opinion on the above referenced cause number.

Sincerely,

Abel Acosta, Clerk





FILED IN COURT OF APPEALS
12th Court of Appeals District

APR 28 2016

TYLER TEXAS
PAM ESTES, CLERK

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1505-14

**DAVID SCHLITTLER, Appellant**

v.

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TWELFTH COURT OF APPEALS
## ANDERSON COUNTY

ALCALA, J., delivered the opinion for a unanimous Court.

## OPINION

In this opinion, we determine that the statute under which David Schlittler, appellant, was convicted is not unconstitutional as applied to him. Appellant challenges the statute defining the offense of Improper Contact with a Victim under Texas Penal Code Section 38.111, which prohibits a person confined in a correctional facility after being convicted of certain sex offenses from contacting the minor victim of the offense or a minor member of

the victim's family.[1] He explains that he was convicted under that statute for contacting his biological son while imprisoned for the aggravated sexual assault of his former step-daughter, who is also his son's half-sister. Appellant argues that, because it prohibits contact between him and his biological son, the statute, as applied, infringes upon his fundamental liberty interest in the care, custody, and management of his son, in violation of his rights to due process and equal protection under the Fourteenth Amendment to the federal Constitution. We disagree. With respect to appellant's due-process challenge, we conclude

---

[1] Texas Penal Code Section 38.111 provides,

(a) A person commits an offense if the person, while confined in a correctional facility after being charged with or convicted of an offense listed in Article 62.001(5), Code of Criminal Procedure, contacts by letter, telephone, or any other means, either directly or through a third party, a victim of the offense or a member of the victim's family, if:
(1) the victim was younger than 17 years of age at the time of the commission of the offense for which the person is confined; and
(2) the director of the correctional facility has not, before the person makes contact with the victim:
(A) received written and dated consent to the contact from:
(i) a parent of the victim;
(ii) a legal guardian of the victim;
(iii) the victim, if the victim is 17 years of age or older at the time of giving the consent; or
(iv) a member of the victim's family who is 17 years of age of older; and
(B) provided the person with a copy of the consent.
(b) The person confined in a correctional facility may not give the written consent required under Subsection (a)(2)(A).
(c) It is an affirmative defense to prosecution under this section that the contact was:
(1) indirect contact made through an attorney representing the person in custody; and
(2) solely for the purpose of representing the person in a criminal proceeding.

TEX. PENAL CODE § 38.111.

that, under the particular facts of this case that show that appellant's right to privately communicate with his son had already been permanently enjoined as a result of a separate civil-court order, appellant has failed to show that he had a protected liberty interest that was infringed upon by the statute, and thus his constitutional rights were not violated on that basis. With respect to appellant's equal-protection complaint, we further conclude that Section 38.111 is neither based on a suspect classification, nor does it unduly infringe upon a fundamental liberty interest under the facts of this case, and, therefore, its application to appellant's circumstances does not result in a constitutional violation. We, therefore, affirm the court of appeals's judgment upholding appellant's conviction.

## I. Background

In 1994, appellant was married to L.M., and in 1995, they had a child together, B.S. At the time of her marriage to appellant, L.M. also had a five-year-old daughter from a previous marriage, B.M. In 1998, appellant and L.M. divorced, and, from then on, B.S. primarily resided with L.M. In 2005, B.M. made an outcry against appellant for having sexually abused her during the period from 1994 to 1998, when L.M. was married to appellant. Appellant was subsequently indicted for the aggravated sexual assault of B.M. In 2007, he pleaded guilty to that offense and was placed on deferred adjudication community supervision.

Following appellant's plea of guilty, L.M. petitioned the family court to modify the parent-child relationship between appellant and B.S., who was by that time around twelve

years old. After a hearing at which L.M. and appellant both appeared and were represented by counsel, the family-court judge rendered an "Order in Suit to Modify Parent-Child Relationship."[2] Amongst other modifications to appellant's parental rights, that order determined that, in light of the facts of the offense, it was in B.S.'s best interest for appellant to be "permanently enjoined . . . from having any contact at all with [B.S.] except during periods of possession." More specifically, the order stated that appellant was "permanently enjoined from any contact with [B.S.], direct or indirect, including without limitation, communication through Bonita Ralston, or anyone acting in concert with [appellant] and through any means, including, but not limited to telephonic, Instant Messaging, Email, Chatroom, Text Messaging, written communication, or in person communication except for

---

[2]     A suit affecting the parent-child relationship (SAPCR) is governed by the relevant provisions in the Texas Family Code. *See, e.g.*, TEX. FAM. CODE §§ 101.032(a) (defining a SAPCR); 109.002 (providing for right of appeal from a final SAPCR order); 156.001 (providing for modification of existing SAPCR order). Regarding the relevant considerations the court may take into account in such a proceeding, the Family Code provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of . . . possession and access to the child," but it further states that the court "may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child." *Id.* §§ 153.002; 153.072; 153.193. In particular, with respect to the relevance of past instances of sexual abuse committed by a parent, the Code provides that the family court "shall consider the commission of family violence or sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." *Id.* § 153.004(c); *see also id.* § 156.104 (providing for modification of existing SAPCR order based on parent's subsequent conviction for aggravated sexual assault of a child). There is a "rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present . . . sexual abuse by that parent directed against the other parent, a spouse, or a child." *Id.* § 153.004(e).

those periods of possession granted herein."[3] The order further specified that any periods of possession must be supervised by a third party, and it ordered appellant to refrain from discussing certain topics with B.S. during those periods of possession, including L.M., B.M., and the aggravated-sexual-assault charges to which appellant had pleaded guilty.[4]

---

[3] This portion of the order stated,

*Injunctive Relief*

The Court finds that, because of the conduct of DAVID CHARLES SCHLITTLER, a permanent injunction against him should be granted as appropriate relief because there is no adequate remedy at law.

The permanent injunction granted below shall be effective immediately and shall be binding on [appellant]; on his agents, servants, employees, and attorneys; and on those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

IT IS ORDERED that DAVID CHARLES SCHLITTLER is permanently enjoined from:
. . .
5. Having any contact with [B.S.] at all, directly or indirectly, until September 18, 2007. Thereafter, David Charles Schlittler is permanently enjoined from having any contact at all with the child except during periods of possession. David Charles Schlittler is ORDERED to refrain from any contact with the minor child until September 18, 2007, and then only through supervised possession. DAVID CHARLES SCHLITTLER is permanently enjoined from any contact with the child, direct or indirect, including without limitation, communication through Bonita Ralston, or anyone acting in concert with David Charles Schlittler and through any means, including, but not limited to telephonic, Instant Messaging, Email, Chatroom, Text Messaging, written communication, or in person communication except for those periods of possession granted herein.

[4] The portions of the SAPCR order governing appellant's possessory rights stated as follows:

1. *Possession Order*:
[Appellant] shall have supervised possession of [B.S.] every 1st, 3rd, and 5th Saturday of each month for a maximum amount of time of two hours by Alma Hays . . . at [appellant's] sole expense. IT IS ORDERED that [appellant] bring no other people

In 2008, the State filed a motion to revoke appellant's community supervision. The trial court subsequently adjudicated appellant's guilt and ordered him to serve a twenty-year sentence in prison. While he was in prison, appellant communicated with B.S. through online social-media web sites for about two years, from 2008 to 2010, with the messages being relayed by a third party, appellant's friend Bonita Ralston. In 2010, L.M. became aware of the communications between appellant and B.S., and she alerted prison officials. As a result of his contact with B.S., appellant was charged and convicted of the offense of Improper Contact with a Victim, and he was sentenced to an additional eight years' imprisonment.

---

to any period of supervised possession. [Appellant] is ORDERED to refrain from discussing the following topics or people: [B.M.], [L.M.] . . . any events which may occur at the child's home, any psychological or psychiatric counseling that may or may not be in place for [B.S.] or [appellant], the Aggravated Sexual Assault charges which resulted in a guilty plea on June 8, 2007, any court matters, any events that may or may not occur in [B.S.'s] home and or derogatory comments regarding [B.S.'s] educational experience.

. . .

4. *Restricted Periods of Access*
The Court finds that awarding DAVID CHARLES SCHLITTLER access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child. IT IS THEREFORE ORDERED as follows:
    a.    Visitation shall be under the supervision of Alma Hays . . . on the following days and times: Every 1st , 3rd and 5th Saturday of each month for a maximum time of two hours.

5. *Supervised Visitation*
    The Court finds that credible evidence has been presented that DAVID CHARLES SCHLITTLER has a history or pattern of sexual abuse directed against [B.M.], the half-sister of [B.S.], the child the subject of this suit. IT IS THEREFORE ORDERED that visitation shall be under the supervision of Alma Hayes[.]

On appeal to the Twelfth Court of Appeals, appellant challenged his conviction on the basis that Section 38.111 was unconstitutional as applied to him. In particular, he asserted that the statute unconstitutionally infringed upon his fundamental liberty interest in parenting his child, in violation of the federal Due Process Clause. He further asserted that the statute violated his right to equal protection due to its singling out of persons confined in a correctional facility after being charged with certain sexual offenses and due to the fact that the governmental interest at stake—protecting minor sexual-assault victims from further victimization—was unrelated to suppression of his fundamental parental rights. Rejecting these arguments, the court of appeals upheld appellant's conviction. *Schlittler v. State*, 476 S.W.3d 496, 500 (Tex. App.—Tyler 2014).

With respect to appellant's due-process complaint, the court of appeals reasoned that, although parents ordinarily have a "fundamental interest in the care, custody and management of their children," the rights of natural parents are "not absolute" and may be infringed upon in order to protect the child. *Id*. at 499 (observing that "protection of the child is paramount," and, as such, parents' rights can be "limited or even terminated"). The court further reasoned that the State has a "compelling interest in protecting victims of criminal activity, and their families, even if they are all members of the same family." *Id*. Applying those principles, the court explained that the statute, which was "triggered by Appellant's criminal behavior, protects B.M. and her family members from Appellant." *Id*. It further noted that the facts in this case showed that appellant was "attempting to communicate with

B.M. through B.S., a situation the statute helps guard against." *Id.*[5] The court accordingly concluded that the statute, as applied, "did not deprive Appellant of a fundamental interest capriciously or arbitrarily" and, thus, did not violate his due-process rights. *Id.* at 499-500.

With respect to appellant's equal-protection complaint, the court of appeals also rejected that argument, explaining that the statute's singling out of a certain class of offenders was justified by the government's substantial interest in protecting child victims of sex crimes. *Id.* at 500. In particular, the court reasoned that the "class created [by Section 38.111] is defined by the particular crime committed," and the crimes carved out by the statute "all involve physical and emotional harm of a particularly sensitive nature." *Id.* Given these considerations, the court determined that the "need to protect victims of these particular crimes, as well as their families, justifies the classification." *Id.* Moreover, the court observed that, because the statute applies equally to all class members, it "provides equal treatment for all class members' fundamental rights of parenting." *Id.*

This Court granted appellant's petition for discretionary review to assess his complaint that the court of appeals erred by concluding that the improper-contact statute, as applied to him, did not violate his rights to due process and equal protection.[6]

---

[5]     Here, the court of appeals appears to have been referring to evidence in the record indicating that appellant sent messages encouraging B.S. to contact B.M. for the purpose of urging her to recant the sexual-abuse allegations. In particular, in one message to B.S., appellant asked B.S. if he could "work on [B.M.] to recant, [to] tell the truth."

[6]     Appellant's two grounds in his petition for discretionary review state,

Did the Twelfth Court of Appeals err by holding that Section 38.111, Penal Code, as

## II. Analysis

In his brief to this Court on discretionary review, appellant asserts that the court of appeals erred in its analysis by failing to subject the improper-contact statute to meaningful strict-scrutiny review, as is required whenever a statute infringes upon a fundamental liberty interest, or whenever a statute classifies persons in such a way that the classification interferes with a fundamental right. In particular, he urges that the court of appeals failed to recognize that, because his son was not the victim of any sexual offense but was instead merely a member of the victim's family, the statute "swept much too broadly" by cutting off all contact between him and his son, and thus it is not narrowly tailored to serve a compelling governmental interest. In response to this contention, the State asserts that, because appellant had already been civilly deprived of any right to communicate with his son outside of periods of supervised visitation, he has not demonstrated that the statute infringed upon any fundamental right actually possessed by him.

Although we reach our conclusion through different reasoning, we agree with the court of appeals's ultimate determination that the improper-contact statute, as applied, does not violate appellant's rights to due process and equal protection under the Fourteenth Amendment. With respect to appellant's due-process complaint, we conclude that appellant

---

applied to [appellant], does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

Did the Twelfth Court of Appeals err by holding that Section 38.111, Penal Code, as applied to [appellant], does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

has failed to demonstrate that he had a protected liberty interest in communicating with his son in the manner at issue in this case, in light of the family-court order that had permanently enjoined appellant from engaging in such unsupervised communications with his son. We, therefore, need not reach the broader questions of whether the government has articulated a compelling interest in barring all communication between appellant and his son or whether the statute is narrowly tailored to serve that interest. With respect to appellant's equal-protection complaint, we determine that the statute is neither based on a suspect classification, nor does it interfere with the exercise of a fundamental right possessed by appellant, and, as such, it does not give rise to an equal-protection violation under these circumstances. We explain each of these conclusions in turn below.

## A. The Improper-Contact Statute, As Applied, Does not Violate Appellant's Due-Process Rights

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The Supreme Court has interpreted this language as encompassing both substantive and procedural components. *Washington v. Glucksberg*, 521 U.S. 702, 719-720 (1997). In *Glucksberg*, the Supreme Court explained that "[t]he Due Process Clause guarantees more than fair process, and the liberty it protects includes more than the absence of physical restraint. The Clause also provides heightened protection against governmental interference with certain fundamental rights and liberty interests." *Id.* at 719-20 (citations omitted); *see also Reno v. Flores*, 507 U.S. 292, 301-02

(1993). A statute that infringes upon a fundamental right or liberty interest is subject to strict scrutiny, which requires a reviewing court to assess whether "the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721. On the other hand, a statute that infringes upon a non-fundamental right must merely meet the standard of "rationally advancing some legitimate governmental purpose[.]" *Flores*, 507 U.S. at 306.

A fundamental right is one that is, objectively, "deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720-21 (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 502 (1977); *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934); *Palko v. Connecticut*, 302 U.S. 319 (1937)). One of these fundamental liberty interests, long recognized by the Supreme Court, is the interest that parents have in the care, custody, and control of their children. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see also Lehr v. Robertson*, 463 U.S. 248, 258 (1983); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Pierce v. Society of Sisters*, 268 U.S. 510, 534 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The Supreme Court has, however, further recognized that this interest is not absolute and may be limited where necessary in order to effectuate the compelling governmental interest in the protection of children. *See Lassiter v. Dept. of Social Services*, 452 U.S. 18, 27 (1981) (observing that parental rights "undeniably warrant[ ] deference and, absent a powerful countervailing interest, protection," but further noting that the state has an "urgent interest" in the welfare

of the child) (citations omitted); *Stanley v. Illinois*, 405 U.S. 645, 649 (1972) (observing that the government has a "right" and "duty" to protect minor children); *see also In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("While parental rights are of a constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

An individual bringing a challenge to a criminal statute must "shoulder the burden to establish that [the statute] is unconstitutional." *Luquis v. State*, 72 S.W.3d 355, 365 (Tex. Crim. App. 2002). Moreover, one who seeks to challenge a statute on the basis that it infringes upon a fundamental liberty interest bears the burden of demonstrating, at the outset, that he has a constitutionally protected liberty interest at stake. *See Glucksberg*, 521 U.S. at 721 ("[W]e have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest."); *Flores*, 507 U.S. at 302 (explaining that "[s]ubstantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field") (citations omitted).

Applying the foregoing concepts to the facts of this case, we conclude that appellant has failed to demonstrate that he had any constitutionally protected liberty interest that was infringed upon by the improper-contact statute. Although we recognize, as a general matter, that parents enjoy a right to freely communicate and associate with their children, that

particular right is not implicated in this case, in which the facts clearly demonstrate that appellant had no right to communicate with his son in the manner in which it occurred here due to the civil-court order and, therefore, his constitutional rights were not infringed upon by the improper-contact statute. The record reveals that, prior to his being confined in prison on the aggravated-sexual-assault charge, the SAPCR order had permanently enjoined appellant from communicating with his son, except for during periods of supervised visitation. The modified SAPCR order expressly limited appellant's contact with his son to two-hour periods of supervised possession three times per month. Because it was entered prior to appellant's being confined in prison, the order did not make any provision for supervised visitation while appellant was in prison. Although he could have done so, the record suggests that appellant did not petition the family court to request a modification allowing for supervised contact or some other form of communication with his son during his term of imprisonment. Because it was not the operation of the criminal statute disallowing improper contact with the victim's family that interfered with appellant's contact with his son under the circumstances in which the contact occurred here, but rather was the operation of the modified family-court order, appellant has failed to show that the statute infringed upon any right actually possessed by him. *Parent v. State*, 621 S.W.2d 796, 797 (Tex. Crim. App. 1981) ("Thus, when challenging the constitutionality of a statute, it is incumbent upon the defendant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.").

Appellant attempts to refute this conclusion by suggesting that he retained some parental rights following the modified SAPCR order, including the right to supervised visitation, and he further points to the fact that he has never been deemed an unfit parent, nor has he had his parental rights wholly terminated. On this basis, he suggests that he retained a fundamental right to communicate with his son from prison, notwithstanding the action taken by the family court to limit that particular right in accordance with the established procedures laid out in the Family Code. We disagree. Appellant is correct that the modified SAPCR order expressly specified that he retained certain rights.[7] But the particular right at issue in this case—the right to private, unsupervised correspondence with his son while in prison—was expressly enjoined by the order. Appellant has presented us with no adequate basis upon which we might hold that he retained a fundamental right to engage in private correspondence with his son, notwithstanding the terms of the SAPCR order that explicitly barred such communication. Furthermore, although appellant seeks to more broadly frame the right at issue in this case as being his fundamental right to the care, custody, and management of his son, we view the right at issue here as being somewhat narrower—it is a question of appellant's right to engage in private communications with his son while

---

[7] The SAPCR order provides that appellant, as a parent possessory conservator, retained the right to: (1) "receive information from any other conservator of the child concerning the health, education, and welfare of the child"; (2) "access [ ] medical, dental, psychological, and educational records of the child"; (3) "consult with a physician, dentist, or psychologist of the child;" and (4) "consult with school officials concerning the child's welfare and educational status, including school activities." As previously explained, appellant was afforded the right to have supervised visitation three times per month with B.S. The order further provides that, during periods of possession, appellant had the right to "direct the moral and religious training" of B.S.

imprisoned for the sexual assault of his step-daughter, even though he had already been civilly enjoined from engaging in such communications. Under the facts of this case, we decline to hold that this right should be deemed a fundamental liberty interest. As the Supreme Court has indicated in other contexts, in a substantive-due-process inquiry, the framing of the right at issue is key to determining whether that right is so rooted in this nation's history as to be afforded the same heightened protections as other fundamental rights. *See Glucksberg*, 521 U.S. at 722-24 (framing the asserted liberty interest as the "right to commit suicide with another's assistance," rather than the more abstractly stated "liberty to choose how to die" or "right to choose a humane, dignified death," and determining that there existed no fundamental right to assisted suicide). We conclude that appellant's right to communicate with his son from prison after having been civilly enjoined from engaging in such contact does not rise to the level of a fundamental liberty interest. Because appellant has failed to demonstrate that he had a fundamental liberty interest that was infringed upon by operation of the statute, we need not apply strict scrutiny under these circumstances. *See id*. at 727 (rejecting applicability of strict scrutiny because the "asserted right to assistance in committing suicide is not a fundamental liberty interest protected by the Due Process Clause" and applying only rational-basis review).

Having concluded that strict scrutiny is inapplicable to this situation, appellant's as-applied constitutional challenge fails under the less stringent rational-basis review. *See Flores*, 507 U.S. at 306; *see also Glucksberg*, 521 U.S at 728. For all of the reasons

addressed by the court of appeals, the statute, as applied to appellant's circumstances, constitutes a rational exercise of governmental authority for the purpose of protecting sexual-assault victims and their family members from harassment. *See Schlittler*, 476 S.W.3d at 499; *see also Denver Area Educ. Telecom. Consortium, Inc. v. FCC*, 518 U.S. 727, 743 (1996); *Maryland v. Craig*, 497 U.S. 836, 853 (1990); *Osborne v. Ohio*, 495 U.S. 103, 110 (1990). And, as the State asserts, and as the court of appeals determined in its opinion below, the facts of this case show the necessity of the statute, in light of the fact that appellant communicated with his son in an effort to persuade him to put pressure on the sexual-assault victim to recant her story. For these reasons, we conclude that the statute, as applied to appellant's circumstances, was rationally related to a legitimate governmental interest, and we, therefore, reject appellant's substantive due-process challenge.

**B. The Improper-Contact Statute, As Applied, Does Not Violate Appellant's Right to Equal Protection**

We briefly address appellant's related argument that the improper-contact statute, as applied to this case, violates his right to equal protection under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *See* U.S. CONST. amend XIV; *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). In general, legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne*, 473 U.S.

at 440, 446 (under rational-basis review, statute will be upheld unless the State relies on a classification "whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational"). This general rule gives way, however, when a statute contains a suspect classification, such as one pertaining to race, alienage, or national origin, or whenever a statute contains a classification that "impinge[s] on personal rights protected by the Constitution." *Id*. at 440. In those situations, a statute is subject to strict scrutiny and will be sustained only if it is suitably tailored to serve a compelling state interest. *Id.*; *see also Clark v. Jeter*, 486 U.S. 456, 461 (1988) (explaining that strict scrutiny applies to classifications "affecting fundamental rights"); *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000).

In support of his assertion that Section 38.111, as applied to his situation, violates equal protection, appellant contends that, because it applies only to incarcerated sex offenders, and not to other violent offenders, the statute results in disparate treatment of incarcerated individuals' parental rights. In response, the State contends that appellant has failed to show that sex offenders are members of a suspect class, and thus no equal-protection violation stems from the singling out of sex offenders for disparate treatment.

It is true, as the State notes, that sex offenders do not constitute a protected class for purposes of an equal-protection analysis. *See, e.g., Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999); *Barker v. State*, 335 S.W.3d 731, 736 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *In re M.A.H.*, 20 S.W.3d 860, 866 (Tex. App.—Fort Worth 2000, no pet.).

Although we may agree with the State's observation in this regard, we note that appellant's equal-protection argument is more nuanced. Rather than asserting that sex offenders constitute a protected class, he instead suggests that, even if the statute contains no facially discriminatory classification, it nevertheless gives rise to an equal-protection violation because it contains a classification that impairs the fundamental parental rights of some incarcerated sex offenders—those who commit offenses against children in their own households—while permitting other sex offenders and other types of violent offenders to retain those rights. This disparate treatment as to the parental rights of similarly situated individuals, he suggests, constitutes an equal-protection violation. In support, he cites *Skinner v. Oklahoma*, in which the Supreme Court held that Oklahoma's forced sterilization of habitual criminals was unconstitutional in violation of equal protection because that statute "involve[d] one of the basic rights of man," the right to marriage and procreation. 316 U.S. 535, 540 (1942) (explaining that, "[w]hen the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment").

For two reasons, we reject appellant's suggestion that the improper-contact statute, as applied, violates equal protection on the basis of its use of a classification that allegedly infringes upon a fundamental liberty interest. First, as explained above, in light of the fact that the modified SAPCR order had permanently enjoined appellant's parental right of

communication with his son outside of specified periods of supervised visitation, appellant cannot now complain that the statute violates equal protection on the basis of its infringement of a parental right that he no longer possessed. Second, even setting aside the relevance of the family-court order, we observe that the improper-contact statute does not directly seek to interfere with appellant's parental rights; any such infringement is triggered only incidentally by his conduct in sexually assaulting a member of his own family. Thus, unlike the forced-sterilization statute at issue in *Skinner*, the statute at issue here contains no classification that is expressly directed at infringing upon or interfering with appellant's fundamental parental rights. Rather, as the court of appeals correctly observed, the statute is neutral in that it applies equally to all incarcerated child-sex offenders. To the extent that the statute burdens the parent-child relationship for some incarcerated child-sex offenders and not for others based on the particular circumstances of their offenses, it does so only incidentally, and, therefore, the applicability of strict scrutiny is not triggered on the basis of such disparate treatment. *See Johnson v. Rodriguez*, 110 F.3d 299, 316 (5th Cir. 1997) (observing that an "incidental" burden imposed upon a fundamental right "does not warrant" strict scrutiny under an equal-protection analysis).

As a final matter, we note that appellant has raised an argument that, to the extent that the improper-contact statute might be viewed as a prison regulation, it fails to satisfy the lesser degree of constitutional scrutiny that applies to such regulations. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (explaining that "[m]any of the liberties and privileges

enjoyed by other citizens must be surrendered by the prisoner" and that "[a]n inmate does not retain rights inconsistent with proper incarceration"; thus, a prison regulation affecting a constitutional right that survives incarceration withstands constitutional scrutiny if it bears a "rational relation to legitimate penological interests") (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). With respect to this contention, we conclude that the improper-contact statute is not properly understood as a prison regulation because its apparent purpose is to protect sexual-assault victims and their families from harm, not to further any penological interests. Furthermore, having already rejected appellant's constitutional challenges under the more stringent standard that applies to non-prison regulations, it is unnecessary to address his argument that the statute fails to satisfy the lesser standard applicable to prison regulations.

## III. Conclusion

We conclude that, because he has failed to demonstrate that he had a protected liberty interest in privately communicating with his son while imprisoned in light of the preexisting family-court order enjoining such contact, appellant cannot show that the criminal statute that prohibited such communications was unconstitutional as applied to him. Furthermore, the statute does not discriminate against any protected class, nor does it unduly infringe upon appellant's fundamental liberty interests so as to result in an equal-protection violation under the circumstances of this case. Because the statute is rationally related to a legitimate governmental interest in protecting child sex-assault victims and their families, we reject appellant's as-applied constitutional challenge. We, therefore, affirm the judgment of the

court of appeals.

Delivered: April 27, 2016

Publish