# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00050-CR

---

**Israel Cardoso-Reyna, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY**
**NO. C-1-CR-15-215778, THE HONORABLE JON WISSER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Israel Cardoso-Reyna appeals his conviction for solicitation of prostitution. *See* Tex. Penal Code § 43.02(b). Specifically, he argues that the trial court erred by rejecting his constitutional challenges and his contention that he was the victim of racial profiling. We will affirm.

## BACKGROUND[1]

In November 2015, appellant was driving through an area in southeast Austin when he pulled over to talk to a woman standing on the side of the road. He agreed to pay her $20 in return for oral sex. The woman—an undercover Austin police officer—told him to meet

---

[1] We take this factual background from the testimony and evidence admitted at the pretrial hearing on appellant's motions.

her at the apartments near where she stood, and he drove off. Police arrested him several blocks down the road.

The State subsequently charged appellant by information with one count of soliciting prostitution. Appellant filed a motion to quash arguing that the prostitution statute is unconstitutional facially and as applied to him. He also filed a motion to suppress evidence from his arrest arguing that the Austin Police Department (APD) engaged in racial profiling. The trial court held a hearing where it heard testimony from Officer Kyle Robertson, the officer in charge of the prostitution sting, and admitted evidence from both sides. The trial court overruled both motions, and appellant entered a plea of no contest. The trial court imposed a suspended sentence of 180 days in jail and a $2,000 fine and placed appellant on community supervision for one year. This appeal followed.

## MOTION TO QUASH

Appellant first argues the trial court erred by denying his motion to quash challenging the constitutionality of Section 43.02(b) of the Penal Code. *See id.* ("A person commits an offense if the person knowingly offers or agrees to pay a fee to another person for the purpose of engaging in sexual conduct with that person or another.").[2]

We review the trial court's ruling de novo because the sufficiency of a charging instrument is a question of law, as are questions of constitutionality. *State v. Ross*, 573 S.W.3d 817,

---

[2] Appellant frames his issue as a challenge to all of Section 43.02, but he was charged only under subsection (b). We limit our discussion to the constitutionality of Section 43.02(b) because he can only challenge the constitutionality of that part of the statute. *See Ex parte Hall*, No. 03-18-00731-CR, 2019 WL 1925902, at *3 (Tex. App.—Austin May 1, 2019, pet. ref'd) (mem. op., not designated for publication) (explaining defendant charged with violating one subsection could not challenge constitutionality of entire penal statute); *State v. Stubbs*, 502 S.W.3d 218, 223 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (same).

820 (Tex. Crim. App. 2019); *see Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007) (applying de novo review to decide constitutionality of statute challenged in motion to quash). Statutes are presumptively constitutional, and the party challenging a statute generally "bears the burden of establishing its unconstitutionality." *Vandyke v. State*, 538 S.W.3d 561, 570–71 (Tex. Crim. App. 2017). In a facial challenge, the claimant alleges that the law "operates unconstitutionally in all of its potential applications." *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018). In an as-applied challenge, on the other hand, the claimant "concedes the general constitutionality of the statute" and "asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *Id.* at 698 (citing *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011)).

**First Amendment**

Appellant begins by arguing that Section 43.02(b) is facially overbroad in violation of the First Amendment.

The First Amendment provides in relevant part that the government "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "As a general matter, the First Amendment 'means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Wagner v. State*, 539 S.W.3d 298, 310 (Tex. Crim. App. 2018) (quoting *Ashcroft v. A. C. L. U.*, 535 U.S. 564, 573 (2002)). Ordinarily, a facial challenge to a statute "can succeed only when it is shown that the statute is unconstitutional in all of its applications." *Id.* "The First Amendment overbreadth doctrine provides an exception to this rule whereby a litigant may succeed in challenging a law that regulates speech if 'a substantial number of its applications are unconstitutional, judged in

3

relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 n.6 (2008)). Thus, the overbreadth doctrine "prohibits the government from 'banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.'" *Id.* (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 237 (2002)).

The first step in the overbreadth analysis is to determine what speech the statute covers. *Id.* at 306. Section 43.02(b) prohibits a person from soliciting another or agreeing to sexual conduct in return for a fee. *See* Tex. Penal Code § 43.02(b); *State v. Nelson*, 530 S.W.3d 186, 189 (Tex. App.—Waco 2016, no pet.). Appellant argues that this is a restriction on the content of speech and contends that the First Amendment prohibits such restrictions unless the speech is "directed to inciting or producing imminent lawless action." The State responds that Section 43.02(b) does not prohibit protected speech because the First Amendment does not protect solicitation of illegal transactions. We agree with the State.

"From 1791 to the present . . . the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83 (1992)). Appellant is correct that one of those areas is incitement—speech advocating the use of force or violation of the law. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam) (explaining First Amendment prohibits restrictions on "advocacy of the use of force or of law violation" unless such speech "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). However, another of the "well-defined and narrowly limited classes of speech" in which the First Amendment permits content restrictions is "speech integral to criminal conduct[.]" *Stevens*, 559 U.S. at 468–69 (citing *Giboney v. Empire Storage & Ice Co.*,

4

336 U.S. 490, 498 (1949)). This is true even if the criminal conduct is never completed. *Ex parte Ingram*, 533 S.W.3d 887, 897 (Tex. Crim. App. 2017). "Offers to engage in illegal transactions are categorically excluded from First Amendment protection[.]" *Id.* (citing *United States v. Williams*, 553 U.S. 285, 297 (2008)). "Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech . . . that is intended to induce or commence illegal activities." *Williams*, 553 U.S. at 298. Appellant argues that Section 43.02(b) does not punish solicitation of a crime because "sex between consenting adults is not a crime or lawless or even subject to government oversight." But the Legislature has chosen to punish prostitution—offering or agreeing to engage in sex for a fee. *See* Tex. Penal Code § 43.02(a) ("A person commits an offense if the person knowingly offers or agrees to receive a fee from another to engage in sexual conduct."). Section 43.02(b)'s prohibition on solicitation therefore does not violate the First Amendment. *See Robles v. State*, 585 S.W.3d 591, 596 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (overruling claim that prostitution statute "violates the First Amendment because it permits prosecution for a mere verbal statement" (citing *Young Sun Lee v. State*, 681 S.W.2d 656, 661 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd)); *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 388 (1973) ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes.").

Nonetheless, appellant contends that Section 43.02(b) is overbroad because it also prohibits a substantial amount of protected speech. To be overbroad, the danger that the statute will be applied unconstitutionally "must be realistic and not based on fanciful hypotheticals." *Ex parte Ingram*, 533 S.W.3d at 894 (citing *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016)). Appellant therefore must demonstrate from the statute's "text and from actual fact that a

5

substantial number of instances exist in which the statute cannot be applied constitutionally." *Id.* Appellant's argument centers on the meaning of the term "fee" and that Section 43.02 does not define it. *See generally* Tex. Penal Code § 43.02. He contends that the statute could be used to prosecute a "married couple" who "negotiate to have sex for a 'fee'" because the term could include "favors, gifts, [or] honey dos." However, this Court has held that "fee" in Section 43.02 "means payment in return for *professional services* rendered." *Steinbach v. State*, 979 S.W.2d 836, 841 n.8 (Tex. App.—Austin 1998, pet. ref'd) (emphasis added) (citing *Tisdale v. State*, 640 S.W.2d 409, 413 (Tex. App.—San Antonio 1982, pet. ref'd)); *see Evans v. State*, No. 06-16-00064-CR, 2017 WL 1089806, at *6 (Tex. App.—Texarkana Mar. 22, 2017, pet. ref'd) (mem. op., not designated for publication) (following *Steinbach* and *Tisdale*). Appellant does not explain how this interpretation permits prosecution of a "married couple" for private speech between themselves, and he does not argue that there are other circumstances where the law could be applied unconstitutionally. Because appellant has not shown a realistic possibility that Section 43.02(b) will be applied unconstitutionally in a substantial number of instances, *see Ex parte Ingram*, 533 S.W.3d at 894, we reject his overbreadth challenge, *see Frieling v. State*, 67 S.W.3d 462, 473–75 (Tex. App.—Austin 2002, pet. ref'd) (rejecting similar overbreadth challenge to Section 43.02).

**Fourteenth Amendment**

Next, appellant argues that Section 43.02(b) is facially unconstitutional because it violates his right to privacy secured by the due process clause of the Fourteenth Amendment.

The due process clause encompasses both substantive and procedural components. *Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016). When, as in this

6

case, a party claims that a statute deprives him of a right protected by substantive due process, our level of review depends on whether the right or liberty interest involved is fundamental. *Id.* A fundamental right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). A statute that infringes upon a fundamental right "is subject to strict scrutiny, which requires a reviewing court to assess whether 'the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). "On the other hand, a statute that infringes upon a non-fundamental right must merely meet the standard of 'rationally advancing some legitimate governmental purpose[.]'" *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The party claiming a deprivation of substantive due process bears the initial burden to demonstrate that he "has a constitutionally protected liberty interest at stake." *Id.* at 313–14. A substantive due process analysis asserting infringement of a fundamental right must begin with a "careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721. Appellant contends that he has a fundamental right to decide "how to conduct himself in private matters pertaining to sex." Appellant characterizes the purported right at issue too generally. The ostensible right is more properly characterized as the right to engage another adult in consensual sexual conduct for a fee. *See Robles*, 585 S.W.3d at 595 (characterizing right in similar terms).

Appellant cites several cases involving intimate relationships, beginning with *Lawrence v. Texas,* which held unconstitutional a Texas statute "making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." 539 U.S. 558, 562 (2003). The Court recognized in *Lawrence* that due process protects the freedom to engage in "certain

intimate conduct." *Id.* However, the Court "did not hold that right to be available in all circumstances[.]" *Toledo v. State*, 519 S.W.3d 273, 280–81 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Instead, the Court specifically stated that the liberty interest it recognized did not extend to prostitution, among other types of sexual conduct. *See Lawrence*, 539 U.S. at 578 ("The present case does not involve . . . prostitution."); *see also Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746 n. 40 (5th Cir. 2008) (explaining that *Lawrence* "dealt with two adults engaging in consensual sexual conduct" and not prostitution); *Toledo*, 519 S.W.3d at 281 (noting that liberty interest recognized in *Lawrence* does "not extend to sexual conduct involving prostitution"). Appellant also cites *Obergefell v. Hodges*, 576 U.S. 644 (2015), but that case involved restrictions on same-sex marriage. Absent guidance from a higher court, we decline to interpret either case as establishing a deeply rooted right to engage another adult in consensual sexual conduct in exchange for a fee. *See Adkins v. State*, 418 S.W.3d 856, 861 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (declining appellant's invitation to extend decision of United States Supreme Court to materially different facts). We will therefore apply rational basis scrutiny to appellant's constitutional challenge. *See Robles,* 585 S.W.3d at 595 (applying rational basis scrutiny in challenge to Section 43.02(b)); *see also Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018) (examining California's prostitution statute under rational basis scrutiny).

A court applying rational basis review must uphold a statute that is rationally related to "advancing some legitimate governmental purpose." *Schlittler*, 488 S.W.3d at 313 (citing *Flores*, 507 U.S. at 306). Historically, courts have upheld Section 43.02 on the basis that it deters other crimes, such as human trafficking and sexual assault, and acts as a deterrent to the spread of infectious diseases. *E.g., Robles*, 585 S.W.3d at 596; *Frieling*, 67 S.W.3d at 474.

Appellant contends that the prostitution statute is unnecessary because other penal statutes already criminalize those harms. He also cites contemporary scholarship arguing that decriminalization may be safer and healthier for those engaged in prostitution. But these are essentially policy disagreements, which are insufficient to show that a statute is unconstitutional under the rational basis standard. *See Estes*, 546 S.W.3d at 698 ("Above all, a court should spurn any attempt to turn rational-basis review into a debate over the wisdom, eloquence, or efficacy of the law in question."). We conclude that Section 43.02(b) is rationally related to a legitimate government interest and, therefore, reject appellant's due-process challenge to it. *See Robles*, 585 S.W.3d at 595–97 (rejecting identical challenge to Section 43.02); *see also Gascon*, 880 F.3d at 458 (holding that California's prostitution statute "is rationally related to several important governmental interests, any of which support a finding of no constitutional violation under the Due Process Clause of the Fourteenth Amendment").

Appellant also contends that Section 43.02(b) is unconstitutional as applied because the charge against him resulted from racial profiling by the APD. This contention, however, is not an as-applied challenge to the constitutionality of the statute but rather a challenge to a particular police department's enforcement of it. Appellant failed to show—or even assert—that the *statute* operated unconstitutionally against him. *See Estes*, 546 S.W.3d at 698 (noting that in as-applied constitutional challenge to statute, challenger bears burden of producing evidence "specifically demonstrating that *the law in question* is unconstitutional as 'applied to him'" (emphasis added)). We therefore reject appellant's argument that Section 43.02(b) is unconstitutional as applied to him based on his contention that he was the victim of racial profiling by local police.

9

Having rejected each of appellant's constitutional arguments, we overrule his challenge to the trial court's denial of the motion to quash.

**MOTION TO SUPPRESS**

Next, appellant contends that the trial court erred by denying his motion to suppress all evidence from his arrest. He argues that the evidence and testimony before the trial court established that his arrest was the result of racial profiling.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Wood*, 575 S.W.3d 929, 932 (Tex. App.—Austin 2019, pet. ref'd). Under that standard, we review the record in the light most favorable to the trial court's conclusion and reverse the ruling only if it is "arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We apply a bifurcated standard of review, "giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *Wood*, 575 S.W.3d at 932 (citing *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015)). However, we defer to the trial court's rulings "on application of the law to questions of fact . . . if resolution of those questions depends on an evaluation of credibility and demeanor." *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). When, as here, the trial court does not make express fact findings, we "view the evidence in the light most favorable to the trial court's rulings and assume that it made implicit fact findings that find support in the record." *Id.*

Texas law prohibits peace officers from engaging in racial profiling. Tex. Code Crim. Proc. art. 2.131. Racial profiling "means a law enforcement-initiated action based on an

individual's race, ethnicity, or national origin rather than on the individual's behavior or on information identifying the individual as having engaged in criminal activity." *Id.* art. 3.05. Evidence illegally obtained through racial profiling is subject to exclusion in a criminal proceeding. *See id.* art. 38.23(a) (providing that no evidence obtained in violation of federal or Texas law may be "admitted in evidence against the accused on the trial of any criminal case"); *Pruneda v. State*, 104 S.W.3d 302, 305 (Tex. App.—Texarkana 2003, pet. ref'd).

Appellant argues that his arrest was the result of the APD targeting an area with a significant Hispanic population. He further contends that the undercover officer deliberately targeted Hispanic males. The trial court admitted government documents (such as Census reports) from appellant showing that the area where the sting took place is predominately Hispanic, a fact the State does not dispute. Instead, the State relies on Officer Robertson's testimony that APD chose the site through race-neutral criteria and contends that we should defer to the trial court's implicit determination that his testimony is credible. We agree with the State.

Officer Robertson testified that APD performs prostitution stings "once or maybe twice a year" in areas known to be prostitution "hot spots." APD crime analysts determine whether an area is a "hot spot" based off four criteria: "reports generated by patrol [officers]," "crime analysts' reports based off of trends within the city in a particular area," "citizen complaints," and "complaints from other officers." APD personnel use this information to generate a map showing areas of high activity. Officer Robertson stressed that the map does not include any information pertaining to race or immigration status and that the site was not chosen for either reason. He further testified that the undercover officer was instructed to interact with any motorist who pulled over with their window down and that she followed instructions. We assume that the trial court found this testimony to be credible and defer to that determination.

11

*See Arguellez*, 409 S.W.3d at 662.  The trial court admitted a video recording of the undercover officer's interactions with several motorists, and it corroborates Officer Robertson's testimony. Considering all this evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not abuse its discretion by denying appellant's motion to suppress.

We overrule appellant's challenge to the denial of his motion to suppress.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment of conviction.

_____

Edward Smith, Justice

Before Justices Triana, Kelly, and Smith

Affirmed

Filed:   January 22, 2021

Do Not Publish