

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00098-CR

———————————————

SERGIO VALDESGALVAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1658901D

Before Birdwell, Wallach, and Walker, JJ.
Opinion by Justice Birdwell

## OPINION

Appellant Sergio Valdesgalvan[1] appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.01, 22.02(a). In his sole point on appeal, Valdesgalvan argues that Article 38.371 of the Texas Code of Criminal Procedure is facially unconstitutional. We will affirm.

## I. Background

### A. Events Giving Rise to the Present Case

On August 6, 2020, the complainant went to a MetroPCS store to purchase a new cell phone. Before she could complete her purchase, Valdesgalvan—with whom the complainant had had a romantic relationship—arrived at the store and approached her. As soon as the complainant noticed Valdesgalvan, she began screaming and attempting to get away from him. Valdesgalvan then forced the complainant out of the store and began trying to convince her to get back together with him. Edgar Chairez, the manager of the MetroPCS store, followed them out of the store but went back inside after Valdesgalvan threatened him.

After the complainant resisted Valdesgalvan's attempts to convince her to leave with him, their conversation became heated. The complainant testified that

---

[1]In the record and the parties' briefs, Appellant's surname is variously reflected as "Valdesgalvan," "Valdezgalvan," and "Valdes Galvan." We will refer to him as "Valdesgalvan," as this is the spelling that seems to appear most frequently in the record, including in the indictment and judgment of conviction.

Valdesgalvan eventually pulled out a knife and stabbed her in the stomach and "breast area."

After the confrontation outside the store, Valdesgalvan ran away. Chairez testified that he observed "something shining" in Valdesgalvan's hand as he ran away, but he could not tell exactly what it was.

A store employee called 9-1-1, the complainant was taken by ambulance to the hospital, and the police began an investigation. Valdesgalvan was ultimately arrested and charged with aggravated assault with a deadly weapon.

## B. Admission of Extraneous Offense Evidence

At trial, to help the jury better understand the complainant's fear of Valdesgalvan, the State sought to introduce evidence that the two of them had been in a violent relationship. However, before allowing the State to introduce evidence concerning the nature of the complainant's relationship with Valdesgalvan, the trial court held a hearing outside the jury's presence.

At the hearing, the State proffered the complainant's testimony and explained that she would testify about prior abuse.[2] Specifically, the State's proffer showed that

---

[2]The State also sought to introduce testimony from Chairez concerning the abusive nature of the complainant's relationship with Valdesgalvan. However, the trial court ruled that Chairez's statements regarding the complainant and Valdesgalvan's relationship were hearsay and not admissible under Article 38.371 of the Texas Code of Criminal Procedure or Rules 403 and 404(b) of the Texas Rules of Evidence. Nevertheless, the trial court deemed Chairez's testimony about what he had heard on August 6, 2020, admissible under the excited utterance exception to the

3

the complainant would testify about the following events that had occurred during her relationship with Valdesgalvan:

- The reason that the complainant had gone to the MetroPCS store on August 6, 2020, was that Valdesgalvan had taken her phone away during an incident several days before;

- On March 6, 2020, Valdesgalvan had pushed the complainant to the ground after she told him that she did not want to have sex with him;

- On May 16, 2020, after complainant again refused Valdesgalvan's request for sex, he reached into her car to take her keys and then "pulled back on the glass window, which shattered." He then punched the complainant in the back of the head;

- From June 1 to June 3, 2020, Valdesgalvan "told [the complainant] where to go and what to do" and "had someone watch her" while he was at work;

- On June 2, 2020, while they were inside a car in a church parking lot, the complainant refused to have sex with Valdesgalvan, and he proceeded to rip her clothes, pull her on top of him, and have sex with her;

- On June 3, 2020, after the complainant told Valdesgalvan that she wanted to leave him, he punched her in the nose, making her bleed. He then reached over and grabbed her neck "and squeezed with heavy pressure." Later, at the hospital, it was discovered that the complainant's eye socket had been fractured.

Overruling Valdesgalvan's objections to the facial constitutionality of Article 38.371 of the Texas Code of Criminal Procedure, the trial court determined that this evidence was admissible and allowed the complainant to testify about each instance of abuse.

---

hearsay rule. *See* Tex. R. Evid. 803(2). Valdesgalvan does not challenge the trial court's ruling concerning the admissibility of Chairez's testimony on appeal.

The jury found Valdesgalvan guilty of aggravated assault with a deadly weapon and assessed his sentence at eighteen years' confinement. The trial court sentenced him accordingly. This appeal followed.

## II. Discussion

In a single point, Valdesgalvan argues that Article 38.371 of the Texas Code of Criminal Procedure is facially unconstitutional. *See* Tex. Code Crim. Proc. Ann. art. 38.371. Specifically, Valdesgalvan asserts that the admission of extraneous offense evidence under Article 38.371 violates a defendant's right to due process under the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1. Valdesgalvan's argument lacks merit.

We review a constitutional challenge de novo as a question of law, presuming that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Goyzueta v. State*, 266 S.W.3d 126, 130 (Tex. App.—Fort Worth 2008, no pet.). As the accused, Valdesgalvan bears the burden to establish the statute's unconstitutionality. *Id.* "With the statute's presumed constitutionality, [Valdesgalvan] already faces a high burden. But because [he] has launched a facial challenge, he bears an even greater burden." *Allen v. State*, 614 S.W.3d 736, 740 (Tex. Crim. App. 2019). To successfully challenge the constitutionality of Article 38.371 on its face—as opposed to merely challenging whether it was constitutionally applied in this particular case—Valdesgalvan must establish that no set of circumstances exists under which the statute would be valid. *See id.* at 741; *Peraza v. State*, 467 S.W.3d 508, 514 (Tex.

5

Crim. App. 2015). "Given this high burden, a facial challenge is 'the most difficult challenge to mount successfully.'" *Allen*, 614 S.W.3d at 741 (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987)).

Article 38.371 provides as follows:

(a) This article applies to a proceeding in the prosecution of a defendant for an offense, or for an attempt or conspiracy to commit an offense, for which the alleged victim is a person whose relationship to or association with the defendant is described by Section 71.0021(b),[3] 71.003, or 71.005, Family Code.

(b) In the prosecution of an offense described by Subsection (a), subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense described by Subsection (a), including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.

(c) This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law.

Tex. Code Crim. Proc. Ann. art. 38.371. Thus, as relevant here, in cases in which the complainant is in a dating relationship with the accused, Article 38.371 expressly allows for the admission of extraneous offense evidence to show the nature of their relationship. *James v. State*, 623 S.W.3d 533, 546 (Tex. App.—Fort Worth 2021, no pet.).

---

[3]Section 71.0021(b) describes a "dating relationship," which it defines as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code Ann. § 71.0021(b).

As noted above, Valdesgalvan's facial challenge to Article 38.371 is rooted in the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property[] without due process of law." U.S. Const. amend. XIV, § 1.

> The Supreme Court has interpreted this language as encompassing both substantive and procedural components. *Washington v. Glucksberg*, 521 U.S. 702, 719–720, 117 S. Ct. 2258, [2267] (1997). In *Glucksberg*, the Supreme Court explained that "[t]he Due Process Clause guarantees more than fair process, and the liberty it protects includes more than the absence of physical restraint. The Clause also provides heightened protection against governmental interference with certain fundamental rights and liberty interests." *Id.* at 719–20, 117 S. Ct. [at 2267] (citations omitted); *see also Reno v. Flores*, 507 U.S. 292, 301–02, 113 S. Ct. 1439, [1447] (1993). A statute that infringes upon a fundamental right or liberty interest is subject to strict scrutiny, which requires a reviewing court to assess whether "the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721, 117 S. Ct. [at 2268]. On the other hand, a statute that infringes upon a non-fundamental right must merely meet the standard of "rationally advancing some legitimate governmental purpose[.]" *Flores*, 507 U.S. at 306, 113 S. Ct. [at 1449].

*Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016).

Though Valdesgalvan does not explicitly assert that Article 38.371 should be subject to strict scrutiny, he implies as much by his assertion that "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *See id.* ("A statute that infringes upon a fundamental right or liberty interest is subject to strict scrutiny . . . ."). However, as one of our sister courts recognized when presented with a similar facial challenge to Article 38.371, while a defendant has a fundamental right to a fair trial, he does not have a fundamental right to a trial free from the

7

introduction of extraneous offense evidence. *See Thomas v. State*, 651 S.W.3d 102, 108 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Harris v. State*, 475 S.W.3d 395, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)); *cf. De La Paz v. State*, 279 S.W.3d 336, 342–43 (Tex. Crim. App. 2009) (recognizing that although "evidence of other crimes, wrongs, or acts is not admissible 'to prove the character of a person in order to show action in conformity therewith,'" such evidence "may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" (quoting Tex. R. Evid. 404(b))). Thus, we agree with the Fourteenth Court of Appeals that in order to withstand a facial constitutional challenge, Article 38.371 must merely satisfy the rational basis test, meaning that we will uphold the statute as long as it is "reasonable, not arbitrary, and rationally related to a legitimate state interest." *Thomas*, 651 S.W.3d at 108 (first citing *Schlittler*, 488 S.W.3d at 315; and then citing *Jackson v. State*, 807 S.W.2d 387, 390 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd)).

Although Rule 404(b) of the Texas Rules of Evidence precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion, it allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). Those listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. As we have previously

8

recognized, "Article 38.371, which applies to family-violence prosecutions, provides another non-character-conformity purpose for admitting extraneous-offense evidence"—to show the nature of the relationship between the complainant and the accused. *James*, 623 S.W.3d at 545 (citing Tex. Code Crim. Proc. Ann. art. 38.371).

The State has a legitimate—even compelling—interest in decreasing domestic violence, *see Webb v. Schlagal*, 530 S.W.3d 793, 809 (Tex. App.—Eastland 2017, pet. denied) (citing *United States v. Lippman*, 369 F.3d 1039, 1044 (8th Cir. 2004)); *cf. Ex parte Poe*, 491 S.W.3d 348, 354 (Tex. App.—Beaumont 2016, pet. ref'd) (recognizing "the State's legitimate and compelling interest in protecting its citizens from potential harm"), and evidence regarding the nature of a family or dating relationship can play an important role in domestic violence cases. As the Fourteenth Court of Appeals has recognized,

> complainants in family-violence cases often do not testify at trial. The nature of the relationship between the actor and alleged victim may be relevant to, among other things, confirm the alleged victim's initial—and later recanted—statements to police, or to explain the alleged victim's unwillingness to cooperate with law enforcement or prosecution.

*Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citation omitted). Additionally, such evidence can provide context that assists the trier of fact in understanding the actions of both the accused and the complainant. *See Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *5 (Tex. App.—Fort Worth Dec. 29, 2022, pet. filed) (mem. op., not designated for publication) (noting that the "probative force" of the State's Article 38.371 extraneous offense evidence

9

"was strong because it provided context and insight into [the appellant's] motivation for striking the complainant and showed how the abuse had escalated over time until the complainant had had enough"). Thus, Article 38.371's purpose—allowing extraneous offense evidence to show the nature of a family or dating relationship in domestic violence cases—is rationally related to a legitimate state interest. *Thomas*, 651 S.W.3d at 109.

Moreover, Article 38.371 explicitly incorporates the procedural safeguards provided by the rules of evidence to ensure that a defendant's right to a fair trial is protected. *See id.* Indeed, the statute expressly states that it "does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law." Tex. Code Crim. Proc. Ann. art. 38.371(c). Thus, contrary to Valdesgalvan's assertion,[4] Article 38.371 does not allow the admission of extraneous offense evidence to show character conformity—a use explicitly proscribed by the rules of evidence. Tex. R. Evid. 404(b). In addition, a defendant is entitled to reasonable notice upon request of the prosecution's intent to introduce extraneous offense evidence. *Id.* Further, a trial court may exclude Article

---

[4]Valdesgalvan's brief is inconsistent on this point. Although he initially characterizes Article 38.371 as a "specific and limited exception" to Rule 404(b)'s general prohibition on the use of character evidence and acknowledges that it "allows introduction of extraneous offenses between a defendant and a person with whom he has a dating relationship for the limited purpose of showing the nature of the relationship between the actor and the alleged victim," he later incorrectly asserts that Article 38.371 "would purport to admit" extraneous offense evidence "for the sole purpose of general character propensity."

38.371 extraneous offense evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Tex. R. Evid. 403. Given these procedural safeguards, we cannot conclude that Article 38.371 is arbitrary or unreasonable. *See Thomas*, 651 S.W.3d at 108.

Joining the Fourteenth Court of Appeals, we conclude that Article 38.371 does not violate the Fourteenth Amendment's Due Process Clause. *Id.* at 109. As our sister court aptly and succinctly stated:

> The statute is rationally related to a legitimate state interest—to allow the State to present evidence (1) explaining why a complainant in a domestic violence case may be uncooperative, (2) confirming the veracity of a complainant's initial but later recanted statements to police, and (3) contextualizing the nature of the relationship. And the statute includes proper procedural safeguards to prevent the admission of evidence of the person's character in violation of his due process rights.

*Id.*

We overrule Valdesgalvan's sole point.

### III. Conclusion

Having overruled Valdesgalvan's sole point, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered: March 16, 2023

11